Joseph Lee ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–00217–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 13, 1993.

John Davis, Angleton, for appellant.

Mary Peter Cudd, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and
ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

Appellant, Joseph Lee Robinson, appeals his judgments for three convictions of burglary of a habitation with the intent to commit theft. TEX.PENAL CODE ANN. § 30.02 (Vernon 1989). The jury rejected appellant's not guilty plea and the court assessed punishment at thirty-five (35) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We reverse and remand for a new trial.

Appellant contends in his sole point of error that the evidence was insufficient to support the trial court's finding that his confession was voluntary and therefore it was error to admit the same into evidence. More specifically he asserts that his confession was inadmissible because the State did not controvert, contradict, rebut, or explain appellant's testimony that the confession was involuntary due to threats, coercion and promises. It will be seen that appellant's contentions are correct and the judgments must be reversed upon the authority of *Farr v. State*, 519 S.W.2d 876 (Tex.Crim. App.1975).

A pre-trial hearing to determine voluntariness was conducted in accordance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *See also Lopez v. State*, 384 S.W.2d 345 (Tex.Crim. App.1964); TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979). At the conclusion of the hearing, the trial court found that the confession of appellant was freely and voluntarily made. The trial court made findings of fact and conclusions of law in which he concluded that at no time on August 21 or August 22, 1991, did any employee of the Lake Jackson Police Department

coerce, or mistreat appellant nor were there any improper promises or threats made to or against appellant. The court further found that the oral and written statement given by appellant after his arrest on August 21, 1991 was given freely voluntarily after appellant voluntarily, knowingly, intelligently and freely waived his rights. We must determine from the record if the court abused its discretion in making this finding.

The indictment alleged three burglaries. Two involved the same habitation and owner, a Mr. Kveton and were alleged to have been committed on the separate dates of August 16, 1991 and August 19, 1991. The other burglary was of a habitation owned by a Mr. Sledge and was alleged to have been committed on or about August 10, 1991. The only evidence of appellant's guilt, apart from his confession, came from the State's witness, James Ray Conalty, who testified he knew appellant and bought a .45 automatic from him in August of 1991. He turned the automatic over to Detective Jerry Wolford of the Lake Jackson Police Department. Detective Wolford then testified this .45 automatic was identified by Mr. Kveton as an item taken in the burglary of his home.

After the jury was selected but prior to the start of evidence, the trial court held a *Jackson v. Denno* hearing to determine the voluntariness of appellant's confession. It was conducted outside of the jury's presence. The only witness called by the State was Detective Carlos Preciado of the Lake Jackson Police Department. He testified that on August 22, 1991, he received a statement from appellant, which he reduced to writing and appellant signed in his presence. The statement was marked as State's Exhibit Number 1. On cross examination, Detective Preciado again testified that the statement was taken on August 22 at lunchtime or 12:15 p.m. and that he did not see appellant on the night of August 21. He also testified that a Detective Dale Davis was present for a brief time during the taking of the statement. He stated that Davis was present a few minutes "ten, fifteen minutes, half an hour." Detective Preciado testified at the hearing that appel-

lant had only been in custody "just a very few hours." During trial, Preciado corrected this testimony to reflect that appellant had in fact been arrested on August 21 and that he did not talk to appellant until August 22. Detective Preciado reaffirmed that Davis also spoke with appellant for a short time but did not recall what Detective Davis said to appellant. Detective Preciado denied personally making any promises or pressuring appellant.

Appellant was then called to the stand at the *Jackson v. Denno* hearing to testify to the voluntariness of the confession. Appellant testified that he was arrested about 3:00 p.m. on August 21, 1991 by Officers Davis and Hromadka. Appellant testified to the following:

A. When they arrested me, they came back to the jail, took me back into the office.

Q. Who is they?

A. Dale Davis and Paul Hromadka.

Q. Go ahead.

A. At one point they came back to the jail and they talked to me where they book you. They talked to me right there and told me it was in my best interest to make a statement. And then another time Dale Davis had came back and brought me out and took me to the office.

Q. What kind of promises did Dale Davis make to you?

A. He told me that if I signed the statement he would talk to the DA because he knew the DA.

Q. Did Preciado, who just testified, did he make any promises to you?

A. No.

Q. So Dale Davis is the one that made the promise to you?

A. Yeah.

Q. And he said that he would—

A. He also, when we first got in the office, he jumped—he was standing up when I came in and I sat down. I wasn't going to sign no statement or anything because I knew better. But then he started yelling at me and leaning over the desk and yell-

ing at me, saying that he was going to give me a whole bunch of time if I didn't sign a statement. He was going to make sure I got a whole bunch of time because he knew people in high places.

Q. Is that the reason that you signed the statement?

A. Yeah.

Q. Are you saying then you did not sign it voluntarily?

A. Yeah.

The only rebuttal of this evidence by the State was in cross-examination of appellant by impeachment with prior convictions and through use of the statement itself showing that appellant read the warnings on the confession form and that portions of the statement were true. No further witnesses were called at the *Jackson v. Denno* hearing. At the close of the hearing, appellant's counsel objected to the admission of the confession on the basis that it was not voluntarily given. The court overruled this objection finding that the statement was voluntarily given and was admissible as a matter of law.

At trial and prior to admission of appellant's statement before the jury, appellant's counsel again objected to admission of the statement on the grounds that it was involuntarily taken. This objection was again overruled. Appellant's statement was then read to the jury in its entirety. Later during the trial and after the confession had been admitted, the State called a Detective Jerry Wolford of the Lake Jackson Police Department. Appellant had mentioned talking with Detective Wolford at the *Jackson v. Denno* hearing but Preciado denied knowing Wolford was present or that he talked to appellant. Wolford testified that he was present when Preciado was interviewing appellant and that he talked to appellant and promised him that they would not file every case against him if he made a statement. He went further by conveying this promise to appellant's mother. The point is that Detective Preciado was not aware of all the conversations that Lake Jackson Police Officers had with appellant.

*Summary*

Appellant testified to a specific incident of coercion and promises which caused him to sign the confession out of fear that Detective Davis could get "persons in high places" to act either to hurt or help him depending on whether or not appellant exercised his constitutional rights. His allegations went to a specific officer and a specific incident occurring prior to the day that Preciado took appellant's statement. Detective Davis was never called to rebut these allegations nor was his absence explained. No other person rebutted this testimony nor did anyone testify they were present with Davis when he spoke with appellant on the date of his arrest. Detective Hromadka, likewise, was not called as a witness. Preciado denied any knowledge of the incident.

In *Moore v. State*, 700 S.W.2d 193 (Tex. Crim.App.1985), the Texas Court of Criminal Appeals stated that "whenever the accused's testimony reflects that he was unlawfully caused to make a written confession, and his testimony is uncontradicted, then the accused's written confession is inadmissible evidence as a matter of law." *Id.* at 202. *See also, Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Sims v. Georgia*, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); *Smith v. State*, 547 S.W.2d 6 (Tex.Crim.App.1977). "[T]he test ... is not whether the evidence is rebutted, but, instead, whether it is controverted." *Moore*, 700 S.W.2d at 202.

In *Farr v. State*, 519 S.W.2d 876, 880 (Tex.Crim.App.1975), the Texas Court of Criminal Appeals stated that "the State must satisfactorily explain the accused's allegations of coercion in order to satisfy its burden of proof. It has long been the law of this State that whenever the testimony of the accused as to alleged coercive acts is undisputed, then as a matter of law the confession is inadmissible." Note that in *Farr*, as in the instant case, the allegations were that the officer who coerced appellant did so prior to the taking of the confession by another officer. The court noted that the offending officer made an

appearance during the taking of the confession by the second officer in order to bolster the threat. Such occurred in the instant case. *See Farr*, 519 S.W.2d at 878.

In *Sherman v. State*, 532 S.W.2d 634 (Tex.Crim.App.1976) the appellant's allegations went to the acts of a certain Chief of Police. The court noted that "if the State had presented a reasonable explanation of [the Chief's] failure to testify, such as his death or their inability to locate him, the trial court would have been free to disbelieve appellant's testimony. When the State neither placed [the Chief] on the stand nor explained his absence, the obvious inference is that he did not testify because he could not deny appellant's allegations." *Id.* at 736, n. 2 (citing *Sims v. Georgia*, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967) and *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)). In *Sherman*, the threat went to the severity of punishment, i.e., the death penalty. In the instant case, the threat also went to the severity of punishment because Detective Davis "knew people in high places."

The issue in the instant case is coercion. Appellant's testimony regarding the promises made by Davis were in conjunction with the threats designed to demonstrate his influence in the system over and above the law and facts. Detective Wolford, perhaps unwittingly, added to the coercive atmosphere by admittedly promising appellant that he would not file all of the cases that he had on appellant if he would confess. This seeming influence in the system by persons in authority and Davis' stated willingness to exercise that influence if appellant did not waive his constitutional rights, is the illegality of which appellant now complains.

Although the confession recites that appellant gave the confession of his own free will and that it was given freely and voluntarily, the Supreme Court has stated that such statements of voluntariness in the confession carry little weight and are not controlling. "Common sense dictates the conclusion that if the authorities were successful in compelling the totally incriminating confession of guilt, ..., they would have little, if any, trouble securing the self-contained concession of voluntariness." *Haynes*, 373 U.S. at 513, 83 S.Ct. at 1343.

We find that under any standard of the State's burden of proof, the trial court abused its discretion in overruling appellant's motion to suppress because appellant's allegations of coercion were not contradicted. This case is squarely within the holding of *Farr v. State*, 519 S.W.2d 876 (Tex.Crim.App.1975). The confession should not have been entered into evidence.

### Harmless Error Analysis

 In the instant case, the only evidence of appellant's guilt aside from this confession was evidence from James Ray Conalty that Conalty bought a .45 automatic from appellant and that the automatic came from one of the burglaries. It certainly cannot be said beyond a reasonable doubt that admission of this confession made no contribution to the conviction or the punishment. TEX.R.APP.P. 81(b)(2); *Harris v. State*, 790 S.W.2d 568, 587–588 (Tex.Crim.App.1989). Because the State has failed to fulfill its burden of showing that appellant's confession was voluntary, the judgments are reversed and the cause is remanded.

J. CURTISS BROWN, C.J., concurs in the result only:

I believe *Farr v. State* was wrongly decided.