**John Dean ROY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–93–00116–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 17, 1994.

Decided Dec. 2, 1994.

Discretionary Review Refused April 19, 1995.

Kenneth W. Smith, Houston, for appellant.

John B. Holmes, Dist. Atty., Karen A. Clark, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This is an appeal by John Dean Roy of a conviction for capital murder. He was tried by a jury and found guilty. He received the alternative to the death sentence, life with no eligibility for parole for thirty-five years.

Roy contends: (1) that the trial court erred in refusing to suppress Roy's statements that were induced by custodial coercion; (2) that the trial court erred in refusing to suppress Roy's statements that were induced by an illegal arrest; (3) that the trial court committed reversible error in failing to make timely findings of fact on the voluntariness of the confession; (4) that the evidence is insufficient to establish the corpus delicti of capital murder under the common law corpus delicti rule to independently corroborate his confession; (5) that the evidence is legally insufficient under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to support his conviction of capital murder; and (6) that the evidence is factually insufficient under the factual conclusivity clause of the Texas Constitution to support his conviction of capital murder.

On October 29, 1991, a man discovered his son, Randy Dean Bass, dead in his apartment. Police found Bass's normally orderly apartment in disarray. Furniture and other items were overturned, drawers had been thrown open, items were missing, the telephone line was cut, and blood was splattered on the walls. Sergeant Bill Stephens testified that he found a wallet in the apartment with blood stains on the contents as if someone with bloody hands had rifled through the contents. Bass had been stabbed and cut multiple times in the face, body, legs, penis, neck, buttock, arm, and hands. His death resulted from these wounds. An assistant medical examiner testified that at the time of death, Bass had a blood alcohol level of .481. He also stated that ninety percent of the population would be comatose at that level of intoxication.

Based on information provided by people at the scene, police detained and questioned John Dean Roy on October 29. During the discussion, Roy stated that he had never been arrested and that he had injured his ribs in a car wreck. A warrant check was attempted on Roy with no result, because the police computer was down, and he was released. Roy contends that on two separate occasions later that same day he was stopped by different officers who ran warrant checks on him. According to Roy, another officer gave him a ride out of a neighborhood where he was walking, saying it was a bad neighborhood to be walking in.

The next day police discovered that Bass's roommate's car, which was missing from the scene, had been impounded by police after being found wrecked and abandoned. Based on this information, police focused their investigation on Roy. Police then found that, contrary to their earlier check, Roy was wanted on a blue warrant on an unrelated matter.[1] Using this warrant, police arrested Roy on October 30.

After talking with police, Roy made an inculpatory statement, which was recorded on videotape. He eagerly told police that Bass had attempted to sexually assault him and that he had taken two knives from Bass during a struggle in which he stabbed or cut Bass at least fourteen times in self-defense. Roy stated that when he left the apartment he thought Bass was alive; however, he took items to make it appear to police as if a robbery had taken place. He failed to explain how this would prevent police from determining that he was responsible for the crime, especially considering his statement that he thought Bass was alive when he left the apartment.

Under his first point of error, Roy contends that the trial court erred in refusing to suppress Roy's statement that was induced by custodial coercion. In a pretrial hearing,

1. A blue warrant is issued for parole violations.

the trial court determined that the statement was not coerced and therefore admissible.

■ The State must prove the voluntariness of the confession by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). On appeal, however, the appellate court generally does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. *Romero v. State,* 800 S.W.2d 539 (Tex.Crim. App.1990). At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. The judge may believe or disbelieve all or any part of a witness's testimony. His findings should not be disturbed absent a clear abuse of discretion. *Meek v. State,* 790 S.W.2d 618 (Tex. Crim.App.1990).

■ When the defendant's testimony reflects that he was unlawfully caused to make a confession, and his testimony is uncontradicted, then the accused's confession is inadmissible evidence as a matter of law. *Robinson v. State,* 855 S.W.2d 107, 109 (Tex.App.— Houston [14th Dist.] 1993, no pet.), *citing Moore v. State,* 700 S.W.2d 193 (Tex.Crim. App.1985). The State must satisfactorily explain the accused's allegations of coercion in order to satisfy its burden of proof. *Farr v. State,* 519 S.W.2d 876 (Tex.Crim.App.1975).

■ In the case at bar, Roy alleges that before his formal arrest numerous police officers had repeatedly "dogged" him, temporarily detained him, ran repeated warrant checks on him, and escorted him from a neighborhood that they called unsafe. He further alleged that Officer Shirley told him that if he did not cooperate "they would make more trouble" for him. Roy asserts that the simple fact that these allegations were unrefuted constitutes coercion as a matter of law under *Robinson,* 855 S.W.2d at 109. The unrefuted allegations, however, standing on their own, must initially show coercion. Looking to the first group of allegedly coercive acts, this Court fails to see how they constituted coercion. The acts allegedly occurred the day before Roy was taken to the homicide office to give his statement.

These allegations appear to describe normal actions occurring in a police investigation. They are broad conclusory statements, and we fail to find that Roy has even made an allegation of coercion based on these events.

■ Next, we must decide whether Shirley's alleged comment was coercive and if so whether it was controverted. The statement that unless Roy cooperated with police "they would make more trouble for him," could be construed as coercive. Though vague, it could be considered a threat of future action for failure to make a statement. This statement, however, was directly refuted by Shirley, who testified during the suppression hearing that he did not, at any time, coerce Roy into giving the statement. As the trial court was the sole judge of the credibility of the witnesses, it was not an abuse of discretion to conclude that the statement was given voluntarily. We find no abuse of discretion with the trial court's findings in the pre-trial hearing. This point of error is overruled.

■ By his second point of error, Roy contends that the trial court erred in refusing to suppress Roy's statements induced by an illegal arrest. The standard of review governing a trial court's ruling on a motion to suppress is whether the court clearly abused its discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985).

■ Roy first complains that the October 29 detention was an illegal arrest and thus, his confession was the fruit of the poisonous tree. The fruit of the poisonous tree doctrine applies to evidence directly and indirectly acquired in violation of the Fourth Amendment to the United STates Constitution, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), or Article I, § 9 of the Texas Constitution. Intervening events, however, can break the causal connection between the illegal arrest and the confession so that the confession is an act of free will sufficient to attenuate the primary taint. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). The factors to be considered in determining whether taint of the confession obtained from illegal arrest is sufficiently attenuated to permit use of evidence at trial are whether

*Miranda* [2] warnings were given; temporal proximity of arrest and confession; presence and flagrancy of official misconduct; and the presence of intervening circumstances. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Jones v. State,* 833 S.W.2d 118 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993).

■ In the case at bar, *Miranda* warnings were repeatedly read to Roy, including once on videotape just before he gave his statement. Both parties agree that Roy was released and rearrested the next day, at which point he gave his statement. The intervening release of Roy, along with the repeated *Miranda* warnings, indicates an attenuation of taint as to the confession evidence.

Roy next asserts that the October 30 arrest was illegal. He contends that it was error for the trial court not to suppress all evidence produced as a result of this arrest as it was the fruit of the poisonous tree. The State contends that the arrest was carried out under a valid arrest warrant, and thus, the evidence resulting from the arrest was not the result of any poisonous tree.

■ When the State intends to justify an arrest on the basis of a warrant, it is incumbent upon the State to produce the warrant for the trial court to determine sufficiency. In addition, the State must also carry the burden of producing the supporting affidavit for inspection of the trial court. *Miller v. State,* 736 S.W.2d 643, 648 (Tex. Crim.App.1987). For a parolee, however, the State must produce the warrant and "reason to believe" (or some factual basis) that the parolee has violated a condition of his parole, but no affidavit is required. *Garrett v. State,* 791 S.W.2d 137, 141 (Tex.Crim.App.1990).

■ At trial the State offered into evidence the "blue warrant" issued for Roy. The affidavit was also produced at trial, but not offered into evidence. Roy, however, made no objection to the failure to offer the supporting affidavit into evidence as a predicate for the warrant. Because the affidavit was available for review by the trial court

and because no objection was made on the basis that it had not been admitted into evidence to lay the predicate for admission of the warrant, we find that Roy waived any error for the failure to tender this document into evidence. *See Gant v. State,* 649 S.W.2d 30 (Tex.Crim.App.1983); *Jefferson v. State,* 783 S.W.2d 816 (Tex.App.–San Antonio 1990, pet. ref'd). This point of error is overruled.

By his third point of error, Roy contends that the trial court committed reversible error in failing to make timely findings of fact on the voluntariness of the confession.

■ According to Tex.Code Crim.Proc. Ann. art. 38.22, § 6 (Vernon 1979), if a statement is determined to be voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

■ Upon a failure by the trial court to carry out such findings, the appellate court is authorized to abate the appeal and remand to the trial court for such findings of fact and conclusions of law. *See Mayfield v. State,* 821 S.W.2d 357 (Tex.App.—Houston [14th Dist.] 1991, no pet.). These findings are now before us. This point of error is overruled.

■ By his fourth point of error, Roy contends that the evidence does not establish the corpus delicti of capital murder under the common law corpus delicti rule to independently corroborate his confession. The rule requires that a criminal conviction cannot be based upon a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the corpus delicti. *Fisher v. State,* 851 S.W.2d 298, 302 (Tex.Crim.App.1993). The corpus delicti of any crime simply consists of the fact that the crime in question has been committed by someone. *Id.* at 303.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The corpus delicti of murder is established if evidence shows that the death of a human being was caused by the criminal act of another. *Id.* at 303. In *Dunn v. State,* the Court of Criminal Appeals found that the State established the corpus delicti of homicide by proving the identity of a body of a victim and establishing that the victim died from a beating. 721 S.W.2d 325 (Tex. Crim.App.1986). In the case at bar, the deceased's body was identified. The autopsy indicated that the cause of death was stab wounds to the body. Therefore, as in *Dunn,* there is adequate evidence in this case to establish the corpus delicti of homicide in corroboration of Roy's statement.

Roy was convicted of capital murder under the theory that he committed murder in the course of committing robbery. Therefore, there must also be evidence that the defendant formed the intent to take the complainant's property before he murdered the victim. *Nelson v. State,* 848 S.W.2d 126, 131 (Tex.Crim.App.1992). In the case at bar, Bass's father testified that he noticed an answering machine was missing from his son's residence. Bass's roommate's car was also missing from the location. The deceased's wallet had blood on the contents as if someone with bloody hands had looked through the wallet. Throughout the house, drawers were pulled out and things were turned over. The state of Bass's normally orderly apartment and the missing items serve as evidence that the murder was accompanied by theft.

Roy takes the position that his acts were committed in self-defense. This motive is rebutted by the fact that the telephone line was cut. This constitutes evidence that Roy had formed the intent to rob the victim before he murdered him.

All of this evidence, taken together, represents independent corroborating evidence of Roy's confession, in satisfaction of the common law corpus delicti rule. This point of error is overruled.

By his fifth and sixth points of error, Roy contends that the evidence is legally insufficient under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to support his conviction of capital murder and that the evidence is factually insufficient under the factual conclusivity clause of Texas Constitution to support his conviction of capital murder.

In reviewing the legal sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court's exclusive fact jurisdiction under the Texas Constitution both permits and requires this Court to review the factual sufficiency when sufficiency of the evidence is challenged on appeal. *Williams v. State,* 848 S.W.2d 915, 916–17 (Tex.App.—Texarkana 1993, no pet.); *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). In determining whether the evidence is factually sufficient, we must decide, after considering all the relevant evidence, whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990). In our review of the evidence, however, we are mindful that a jury is the exclusive judge of the credibility of the witnesses and may reject any or all of any witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

In addition to the evidence discussed under Roy's common law corpus delicti rule challenge, Roy's confession is considered under the legal and factual sufficiency challenge. Roy admitted to police that he had stabbed Bass at least fourteen times in Bass's apartment.[3] He also stated that he

---

3. Roy stated in his videotaped inculpatory statement that he stabbed Bass once in the neck during an initial struggle, approximately eight times to the face, at least once in the leg, and five or six times when Roy "went off on" Bass.

took a VCR, a radio, an answering machine, and a car from Bass's residence. The only element that the confession does not corroborate is that Roy intended to rob Bass before Roy killed him.

■ In a similar case, *Nelson v. State,* the Court of Criminal Appeals indicated that in order to find the defendant guilty of capital murder based on robbery, the State must demonstrate that the defendant intended to take the complainant's property before, or as, he murdered him. Without such proof, the defendant would only be guilty of murder followed by theft. *Nelson v. State,* 848 S.W.2d 126, 131–32 (Tex.Crim.App.1992). As it is difficult to prove what a defendant was thinking, intent of the accused is ordinarily determined not by direct proof but rather is inferred from circumstantial evidence. *Salisbury v. State,* 867 S.W.2d 894 (Tex.App.— Houston [14th Dist.] 1993, no pet.); *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Intent may be inferred from acts, words, or conduct of an accused, including the circumstances surrounding the acts in which the accused engages. *Salisbury,* 867 S.W.2d 894. Thus, under the same logic, circumstantial evidence can be used to prove when a defendant formed the necessary intent.

■ In Roy's videotaped statement, he stated that he only took the property from the apartment to make the police believe that it was a robbery after he acted in self-defense. The jury, however, as the trier of fact, is the sole judge of the credibility of witnesses and may believe or disbelieve all or any part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). Here they chose to disbelieve Roy's statement that he did not form the intent to take property from the apartment until after he killed Bass. As discussed above, the evidence shows that Roy cut the telephone line. This fact, along with the entire circumstances, refutes Roy's account of self-defense. The jury was then left with the only apparent motive remaining for murder: robbery. The jury could therefore infer that Roy formed the necessary intent to rob Bass before he killed him. This evidence

constitutes legally and factually sufficient evidence to support the conviction of capital murder. This point of error is overruled.

The judgment of the trial court is affirmed.