# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00166-CR

**Joseph Duran, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C-21-0449-SA, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## MEMORANDUM OPINION

Joseph Duran was charged with evading arrest or detention with a motor vehicle. *See* Tex. Penal Code § 38.04. The indictment contained two enhancement paragraphs alleging that Duran had previously been convicted of two felony offenses. *See id.* § 12.42. After the jury found Duran guilty, he pleaded true to both enhancement allegations. Following a punishment hearing, the jury sentenced Duran to forty years' imprisonment. *See id.* The trial court rendered its judgment of conviction consistent with the jury's determinations. In four issues on appeal, Duran contends that the trial court erred by admitting State's Exhibit 13 Pre-Revocation Warrant, by failing to grant his motion for a directed verdict, and by failing to grant his motion for new trial. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Duran was tried before a jury for evading arrest or detention with a motor vehicle. During the guilt-innocence phase, the following witnesses testified: Kiersten Hernandez and Officer Francisco Carrillo. In addition, a recording from Officer Carrillo's body camera was admitted into evidence and played for the jury.

In a hearing held outside the jury's presence, the parties discussed the admissibility of State's Exhibit 13. That document was entitled "Pre-Revocation Warrant," identifies Duran as the subject of the warrant, and lists his date of birth, gender, race, systems identification number (SID), and Texas Department of Criminal Justice number. Further, the warrant stated that Duran had previously been convicted of a felony and placed on community supervision. Next, it provided that reliable information indicated that Duran violated the terms or conditions of his community supervision, lapsed or was about to lapse into criminal activity, or was ineligible for release. Finally, the warrant directed police officers to arrest and detain him until he may be placed in the custody of an agent of the Texas Department of Criminal Justice.

During the hearing, Hernandez testified regarding the contents of the exhibit and explained that she worked for the Parole Division of the Texas Department of Criminal Justice, that she met Duran when he reported to the community-supervision office, that a pre-revocation warrant for Duran's arrest issued before Officer Carrillo initiated a traffic stop of Duran, that the warrant issued because Duran had violated a condition of his community supervision, and that these types of warrants are kept in the Department's normal business activity. In her testimony, Hernandez explained that Exhibit 13 was a copy of the warrant that she obtained from the Offender Information Management System database used by community-supervision officers.

However, Hernandez admitted that she had not seen the actual written warrant and that Exhibit 13 was not an authenticated or certified copy of the original warrant.

At the hearing, Duran argued that the exhibit should not be admitted because it was not a certified copy of the official warrant, contained inadmissible hearsay, and did not qualify for admission under the exception to the rule against the admission of hearsay for records of regularly conducted activity. *See* Tex. R. Evid. 801, 802, 803(6). At the conclusion of the hearing, the trial court admitted the exhibit for the purposes of the hearing only. The exhibit was not shown to the jury or given to the jury to consider in making its determination.

Following the hearing, Hernandez testified before the jury that she was familiar with Duran and knew that he had an active warrant for his arrest on the day that he allegedly committed the offense of evading arrest or detention. Hernandez did not discuss the contents of Exhibit 13.

Next, Officer Carrillo testified that he received a dispatch call concerning "a wanted subject," providing a description of that person's vehicle as well as the license plate number, and identifying the wanted person as Duran. Moreover, Officer Carrillo explained that he saw a picture of Duran on his computer. Officer Carrillo related that he observed Duran driving the vehicle described in the dispatch call and initiated a traffic stop of the vehicle by turning on his emergency lights.

Additionally, Officer Carrillo explained that after Duran pulled over, he approached Duran's vehicle while wearing his patrol uniform and told Duran to turn off his vehicle because he was "a wanted person." Officer Carrillo described Duran as acting nervous and recalled that Duran asked the other police officer present and him if they could just forget that they saw him and let him go because otherwise "he was going to be locked up for a long

3

time." Next, Officer Carrillo stated that Duran refused to turn his vehicle off or get out of the vehicle and instead sped off in his vehicle. Officer Carrillo testified that he returned to his car, activated his emergency lights and siren, and pursued Duran for a few miles before his supervisor called off the chase.

On cross-examination, Officer Carrillo testified that he asked dispatch to confirm the warrant for Duran's arrest but said that no one confirmed the initial report before the traffic stop occurred. In addition, Officer Carrillo admitted that he did not have any paperwork on him at the time of the stop indicating that there was a warrant for Duran's arrest, that he did not see Duran commit any crime before the traffic stop began, and that he had no reason to believe that Duran was about to engage in criminal conduct. However, Officer Carrillo clarified that he had reason to believe that there was an arrest warrant for Duran based on the initial report.

During Officer Carrillo's testimony, a recording from his body camera was admitted into evidence and played for the jury. The recording is consistent with Officer Carrillo's testimony and shows Duran pulling his vehicle over to the side of the road, refusing to turn off his vehicle, asking the officers if he could turn himself in later or be arrested at his house because he did not want to leave his stuff behind, and speeding off while the police officers were next to his vehicle. The recording also documents Officer Carrillo pursuing Duran for several miles before stating that he was disengaging from the pursuit.

After considering the evidence presented at trial, the jury found Duran guilty of evading arrest or detention with a motor vehicle. During the punishment phase, a crime scene supervisor testified that Duran's known fingerprints matched those present in prior judgments of conviction bearing Duran's name, and the following prior judgments of conviction were admitted into evidence: three for theft, two for possession of a controlled substance with intent to

4

deliver, two for possession of a controlled substance, one for resisting a search, and one for driving with a suspended license. In addition, a friend of Duran's testified about how Duran takes care of his family, how his family needs him, and how he is planning to change his life.

After considering the evidence, the jury sentenced Duran to forty years' imprisonment, and the trial court rendered its judgment of conviction. Following his conviction, Duran filed a motion for new trial, which was denied by operation of law. *See* Tex. R. App. P. 21.8. Duran appeals the trial court's judgment of conviction.

## DISCUSSION

On appeal, Duran first asserts that the trial court erred by overruling his objections and admitting State's Exhibit 13. In his second issue, Duran argues that the trial court erred by failing to grant his motion for a directed verdict and by failing to grant his motion for new trial because the State failed to introduce into evidence an actual warrant pertaining to Duran. In his third issue, Duran contends that the trial court erred by failing to grant his motion for directed verdict and his motion for new trial because the State failed to introduce any evidence establishing some factual basis for the issuance of a warrant regarding Duran. In his final issue, Duran contends that the trial court erred by failing to grant his motion for new trial because there was insufficient evidence establishing that the arrest was made pursuant to a valid arrest warrant.

Although Duran lists four issues in his statement of the issues, he does not address his issues separately in his argument section. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain clear and concise argument for contentions made); *Aybar v. State*, Nos. 12-09-00320—00321-CR, 2010 WL 3158583, at *1 (Tex. App.—Tyler Aug. 11, 2010, no pet.) (mem. op., not designated for publication) (explaining that failure to comply with clarity requirement can result

5

in waiver of issue).  Moreover, as set out above, many of the issues listed are multifarious.  *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd) (explaining that issue containing "more than one specific ground of error is a multifarious one" and that appellate court "may refuse to consider it").  In addressing his appellate arguments, we have reorganized Duran's claims as assertions attacking the sufficiency of the evidence, the trial court's failure to grant his motion for new trial, and the trial court's admission of Exhibit 13, and we have addressed his appellate arguments under those issues.  Because Duran's sufficiency claims could result "in greater relief than his other issue[s]," we address those claims first.  *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

**Sufficiency of the Evidence**

An appellate issue challenging the denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence supporting the conviction and is reviewed under the sufficiency standard.  *See Williams v. State*, 582 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd).  "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt."  *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted."  *Id.*  "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses."  *Id.*  "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing

6

reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the Penal Code, an individual commits the offense of evading arrest or detention with a vehicle "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him" and if the person "uses a vehicle . . . while the actor is in flight." Tex. Penal Code § 38.04. "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

7

The jury charge included instructions for when a police officer may lawfully arrest or detain someone. "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. art. 14.01(b). Under another "exception to the warrant requirement, an officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). "Investigative detentions are less intrusive than arrests, . . . and an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed." *State v. Wood*, 575 S.W.3d 929, 932 (Tex. App.—Austin 2019, pet. ref'd). Reasonable suspicion "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). For reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that the officer "had a reasonable suspicion" that a violation occurred. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).

Additionally, "[t]he information provoking the officer's suspicions need not be based on his own personal observations." *Carmouche*, 10 S.W.3d at 328. "Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). Stated another way, "under this 'collective knowledge' doctrine, when several officers are cooperating, their cumulative information may be

8

considered in assessing reasonable suspicion or probable cause." *State v. Martinez*, 569 S.W.3d 621, 626 (Tex. Crim. App. 2019). A "police dispatcher is ordinarily regarded as a 'cooperating officer.'" *Derichsweiler*, 348 S.W.3d at 914.

When challenging his convictions, Duran notes that Officer Carrillo initially testified that he knew that there was an active warrant for Duran because "[t]hat was the information given to us by dispatch," but Duran emphasizes that the State withdrew the question in response to Duran's hearsay objection "thereby withdrawing that response from evidence." In addition, Duran highlights that Officer Carrillo testified that he asked dispatch to confirm that there was an active warrant for Duran but that dispatch did not respond. Moreover, Duran emphasizes that Officer Carrillo testified that he initiated the stop based on the alleged warrant and that he did not observe any criminal activity at the time. Additionally, Duran urges that no proper warrant was admitted into evidence establishing that there was a warrant for his arrest at the time Officer Carrillo initiated the traffic stop.

After setting out the preceding foundation, Duran refers to appellate cases discussing the admission of warrants and accompanying affidavits. For example, in *Miller v. State*, the defendant challenged the legality of his arrest and moved to suppress evidence pertaining to his arrest, and the Court of Criminal Appeals explained that "[i]f the State intends to justify the arrest on the basis of a warrant it is therefore incumbent upon the State to produce the warrant" and "the supporting affidavit" to allow the trial court to inspect the warrant to determine if they are sufficient. 736 S.W.2d 643, 645, 648 (Tex. Crim. App. 1987). In another suppression case, the defendant argued in a parole revocation case that the trial court erred by denying his motion to suppress evidence "because the State failed to produce a valid arrest warrant affidavit," and the Court of Criminal Appeals determined that even though no affidavit

9

was produced, evidence was presented "substantiating the reason to believe appellant violated his conditions of parole." *Garrett v. State*, 791 S.W.2d 137, 138, 141 (Tex. Crim. App. 1990). Further, the Court explained that "there must be evidence presented for the trial court to consider and determine whether there was a reason to believe the parolee was subject to arrest." *Id.* at 141 n.2. Next, Duran points to an opinion by one of our sister courts also addressing whether the trial court should have suppressed evidence gathered as a result of the defendant's arrest where the arrest was allegedly illegal. *See Roy v. State*, 892 S.W.2d 96, 100-01 (Tex. App.—Texarkana 1994, pet. ref'd). In that case, our sister court explained that "[w]hen the State intends to justify an arrest on the basis of a warrant, it is incumbent upon the State to produce the warrant for the trial court to determine sufficiency. . . . For a parolee, . . . the State must produce the warrant and 'reason to believe' (or some factual basis) that the parolee had violated a condition of his parole." *Id.* (quoting *Garrett*, 791 S.W.2d at 141); *see also Ballard v. State*, 33 S.W.3d 463, 467-68 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (addressing propriety of trial court's order denying defendant's suppression motion and concluding that supervising court had sufficient factual basis to determine that defendant violated terms of his community supervision). In light of the analyses from the cases above, Duran argues that the State was obligated to but did not introduce the warrant or evidence establishing a "reason to believe" that he violated a condition of his community supervision and that without this evidence the State did not establish an element of the offense that the arrest was lawfully based on a warrant.

As an initial matter, we note that none of the cases discussed above involved defendants accused of evading arrest or detention and that, unlike the case here, the cases all involved suppression rulings. The Court of Criminal Appeals has explained that the exclusionary rules applied in suppression issues "serve a completely different purpose than the

10

evading arrest or detention statute" because "[t]he former deals with the penalty designed to deter future police misconduct, while the latter punishes a person who flees lawful police conduct." *See Day v. State*, 614 S.W.3d 121, 126 (Tex. Crim. App. 2020) (internal footnote omitted). When statutes make "the validity of an arrest or detention . . . an element of the charged offense," like the statute governing evading arrest or detention does, it is inappropriate to litigate "the validity of the seizure as a suppression issue"; "[i]nstead, the issue should be litigated as part of the State's case at trial." *Id.* at 129.

In any event, as set out above, an individual can be convicted of the offense in question without there being an arrest if he intentionally flees from a person he knows to be a police officer when the police officer is attempting to lawfully detain him, *see* Tex. Penal Code § 38.04; that a police officer may lawfully detain someone based on reasonable suspicion that the person has or soon will be engaged in criminal activity, *see Wood*, 575 S.W.3d at 932; *Neal*, 256 S.W.3d at 280; and that no criminal violation need actually have occurred, *see Jaganathan*, 479 S.W.3d at 247.

In this case, Hernandez testified that she was aware that there was a warrant for Duran's arrest active on the day of the alleged offense. Further, Officer Carrillo related that he received a message from dispatch concerning a "wanted" individual, that he was given a description of the individual's vehicle and its license plate number, that he saw a picture of Duran on his computer, and that he saw Duran driving the described vehicle. *Cf. Sneed v. State*, No. 11-11-00121-CR, 2013 WL 1748940, at *3 (Tex. App.—Eastland Apr. 18, 2013, no pet.) (mem. op., not designated for publication) (noting that warrant identified defendant "as a wanted person"). Although Officer Carrillo stated that he did not have paperwork regarding Duran's status and asked for but did not receive more confirmation that Duran was a wanted individual,

11

Officer Carrillo explained that he had reason to believe based on the information given to him that there was a warrant for Duran's arrest. Moreover, Officer Carrillo testified that he initiated a traffic stop by turning on his overhead emergency lights in his marked patrol car and then walked toward Duran's vehicle while wearing his patrol uniform after Duran pulled over.

Next, Officer Carrillo explained to Duran that he was "a wanted person," that he asked Duran to turn off his car, that Duran did not turn off his car, that Duran asked if the officers could forget that they saw him, and that Duran was acting nervous and was worried about being sent to prison for a long time. In addition, Officer Carrillo testified that Duran refused to get out of his vehicle before speeding off in his vehicle a few minutes after pulling over. *Cf. Smith v. State*, 840 S.W.2d 689, 692 (Tex. App.—Fort Worth 1992, pet ref'd) (explaining that detaining individual for "a few minutes" to confirm existence of warrant was reasonable). Officer Carrillo related that he pursued Duran for miles but stopped pursuing him when the chase was called off by his supervisor. Footage from Officer Carrillo's body camera was consistent with the officer's testimony and showed Duran drive away a couple of minutes after he pulled over to the side of the road.

Based on the preceding and on the inferences that the jury was free to make from the evidence, we conclude that a rational jury could have determined that reasonable suspicion existed to detain Duran, that Officer Carrillo attempted to lawfully detain Duran, and that Duran intentionally fled from Officer Carrillo knowing that Officer Carrillo was a police officer. *See Smith v. State*, 483 S.W.3d 648, 655 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (deciding that evidence was sufficient to support lawful detention where officers received information over dispatch and where police saw defendant driving car matching description given by dispatch including license plate number); *Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston

12

[1st Dist.] 2012, pet. ref'd) (determining that evidence was sufficient to support conviction where police officer was wearing uniform and indicated to defendant to stop, where defendant sped up, where police officer activated overhead lights and siren, where police officer pursued defendant, and where defendant sped up and did not pull over); *Horne v. State*, 228 S.W.3d 442, 444-45, 446 (Tex. App.—Texarkana 2007, no pet.) (concluding that although evidence indicated that defendant did not intend to ultimately escape, it did show that he attempted to evade police when he did not stop his vehicle in response to police officer's activating overhead lights and later his siren, to police officer's using public address system to direct defendant to pull over, or to police officer's attempting to block defendant's path); *Hobyl v. State*, 152 S.W.3d 624, 627-28 (Tex. App.—Houston [1st Dist.] 2004) (deciding that evidence was sufficient where evidence showed that uniformed police officer in marked police car activated his emergency lights and siren, where defendant increased his speed to 110 mph when police activated emergency lights, where police pursued defendant for three miles, and where officer observed defendant looking in rearview mirrors), *pet. dism'd, improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006). Accordingly, we overrule the portions of Duran's second through fourth issues challenging the sufficiency of the evidence supporting his conviction and challenging the trial court's decision to deny his motion for a directed verdict.

**Motion for New Trial**

On appeal, Duran also argues that the trial court erred by failing to grant his motion for new trial for the same reasons presented in his sufficiency challenges. More specifically, Duran urges that the State was required to but did not produce the warrant serving as the basis for his arrest or a factual basis for the issuance of the warrant and, therefore, did not establish that the arrest was lawful.

13

"A trial court's denial of a motion for new trial is reviewed under an abuse-of-discretion standard." *Young v. State*, 591 S.W.3d 579, 595 (Tex. App.—Austin 2019, pet. ref'd). Accordingly, "we reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Gonzalez v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010) (quoting *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009)). In reviewing the trial court's ruling, we view the evidence in the light most favorable to the ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). A trial court's ruling is within that zone "when there are two reasonable views of the evidence." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). Stated differently, a trial court abuses its discretion only when no reasonable view of the record could support the ruling. *Webb*, 232 S.W.3d at 112.

As set out above, an individual can commit the offense in question by intentionally fleeing from an individual the person knows to be a police officer when the police officer is attempting to lawfully detain the person. *See* Tex. Penal Code § 38.04. Further, as summarized above, evidence was presented from which the jury could have reasonably determined that reasonable suspicion to detain Duran existed and that Duran intentionally fled from Officer Carrillo knowing that Officer Carrillo was a police officer while Officer Carrillo attempted to lawfully detain him.

In light of the evidence presented at trial, we cannot conclude that the trial court abused its discretion by failing to grant Duran's motion for new trial. Accordingly, we overrule the portions of Duran's second through fourth issues asserting that the trial court erred by failing to grant his motion for new trial.

**Admission of Exhibit 13**

As set out above, in his first issue, Duran contends that the trial court erred by denying his objections regarding Exhibit 13 and by admitting the exhibit into evidence. Specifically, Duran contends that the trial court should not have admitted the exhibit because it was not a properly authenticated or certified copy of an official warrant, because it contained impermissible hearsay, and because the hearsay exception for records of regularly conducted activity did not apply. *See* Tex. R. Evid. 801, 802, 803(6).

Even if the trial court erred in admitting Exhibit 13, we would be unable to sustain Duran's first issue on appeal. A violation of the evidentiary rules resulting in the erroneous admission of evidence is non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Rule of Appellate Procedure 44.2 governs non-constitutional errors and provides that those types of errors must be disregarded unless they affected a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

In determining whether a defendant's substantial rights were affected, the reviewing "court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). The reviewing court "may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized

15

the error, closing arguments, and even voir dire, if applicable." *Ellis v. State*, 517 S.W.3d 922, 932 (Tex. App.—Fort Worth 2017, no pet.).

As a preliminary matter, we note that although Exhibit 13 was admitted, it was only admitted for the purposes of the hearing discussing its admissibility and was not presented to the jury or given to the jury for deliberation purposes. *Cf. McCarter v. State*, 527 S.W.2d 296, 299 (Tex. Crim. App. 1975) (overruling issue challenging admission of evidence introduced for purposes of record only because exhibit was not shown or read to jury). In any event, during voir dire, neither the State nor Duran mentioned Exhibit 13 or its contents or referred to any warrant. Further, although Hernandez testified that she was aware of an active warrant for Duran on the day of the offense and although Officer Carrillo stated that he had been informed that Duran was a wanted individual, neither witness testified regarding Exhibit 13 or its contents.

Moreover, as set out above, the testimony presented at trial and the recording of Officer Carrillo's interaction with Duran provided a basis for the jury to conclude that Duran committed the charged offense. *Cf. Black v. State*, 358 S.W.3d 823, 833 (Tex. App.—Fort Worth 2012, pet. ref'd) (explaining that erroneous admission of evidence did not have substantial or injurious effect in light of other evidence of defendant's guilt). Further, the State did not mention Exhibit 13 or its contents during its opening argument. When discussing a warrant in its closing argument, the State asserted that Officer Carrillo had reasonable suspicion to believe that there was an arrest warrant for Duran but did not reference any details regarding Exhibit 13 or its contents; instead, the State argued that Officer Carrillo attempted to lawfully detain Duran. In contrast, Duran was able to emphasize during his closing argument that no arrest warrant was introduced into evidence, highlighted that Officer Carrillo asked for someone from dispatch to

16

confirm that there was an arrest warrant for Duran but that no confirmation was made, and argued that it was insufficient for an officer to believe that a warrant existed.

In light of the preceding, we conclude that any alleged error stemming from the admission of Exhibit 13 did not affect Duran's substantial rights. *See* Tex. R. App. P. 44.2(b). Accordingly, we overrule Duran's first issue.

## CONCLUSION

Having overruled all of Duran's issues on appeal, we affirm the trial court's judgment of conviction.

_____
Thomas J. Baker, Justice

Before Justices Baker, Smith, and Jones*

Affirmed

Filed:   June 23, 2023

Do Not Publish

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

17