COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-140-CR

MICKEL WAYNE LAMBETH, JR.                                             APPELLANT

                                                   V.

THE STATE OF TEXAS                                                                STATE

                                              ------------

             FROM
THE COUNTY COURT AT LAW OF HOOD COUNTY

                                              ------------

                        OPINION
ON REHEARING EN BANC

                                              ------------

Following the issuance of our original opinion,
appellant Mickel Wayne Lambeth, Jr. filed a motion for en banc rehearing.  Appellant=s motion
for en banc rehearing is granted.  We
withdraw our opinion and judgment of November 23, 2005, and substitute the
following in their place.

I. Introduction








Appellant appeals his conviction for possession
of less than two ounces of marijuana.  In
two issues, he contends that the trial court erred in denying his motion to
suppress.  In his first issue, appellant
argues that the troopers wrongfully detained him in the absence of continuing
reasonable suspicion.  In his second
issue, he asserts that the State failed to prove by clear and convincing
evidence that his consent to the search was voluntary.  We affirm.

II. Background Facts 

At 10:11 p.m. on September 10, 2003, Department
of Public Safety Troopers Randall Wilson and Jim Hatfield stopped appellant
because he was speeding.[1]  After pulling appellant over, Trooper Wilson
approached the driver=s side of the vehicle and asked
appellant for his driver=s license and insurance
card.  Appellant complied and informed
Trooper Wilson that his license had expired and that the vehicle belonged to
his mother.  Trooper Wilson then asked
appellant to step outside of the vehicle. 
Appellant volunteered that he was driving to his boss=s house
to pick up paint.  When Trooper Wilson
observed that the car was not registered, appellant explained that another
officer had removed the expired registration sticker during a previous traffic
stop.  Trooper Hatfield, who was standing
on the passenger=s side of the vehicle, inspected
the interior of appellant=s car with a flashlight. 








At 10:13 p.m., appellant exited the vehicle.  Trooper Wilson then began questioning him
about why he was driving with an expired driver=s
license. Appellant told him that he had been unable to renew his license
because of some legal trouble stemming from a family matter in Corpus
Christi.  He went on to explain that the
State had charged him with theft because he took some property from a cousin
who owed him money.  Appellant denied
having any outstanding warrants, however, and invited Trooper Wilson to run a
warrant check on him.  Trooper Hatfield
called in a warrant check at 10:14 p.m. 

At approximately 10:15 p.m., four minutes into
the stop, Trooper Wilson began administering field sobriety tests because he
smelled alcohol on appellant=s
breath.  While Trooper Wilson was
administering the sobriety tests, appellant admitted drinking two beers just
before leaving his mother=s house. The tests were
completed at 10:22 p.m.








After determining that appellant was not
intoxicated, Trooper Hatfield and Trooper Wilson questioned appellant about a
suspicious object in his vehicle, his destination, and warrants.  Trooper Hatfield asked appellant to identify
an object in the back seat of his vehicle,[2]
which he did.  Trooper Wilson then asked
appellant about his destination and warrants. 
Appellant reiterated that he was on his way to his boss=s house,
and, although he did not know the address, he explained how to get there.  When asked about outstanding warrants,
appellant admitted having had some warrants in Hood County and a warrant for
theft from Corpus Christi, but he said that he had taken care of them. 

At 10:26 p.m., about fifteen minutes into the
stop, Trooper Wilson then asked appellant if he had any contraband in the
vehicle and if appellant would consent to a search of his vehicle.  Appellant said he had no contraband in the
vehicle, but he refused to consent to a search because the vehicle belonged to
his mother.  When Trooper Wilson
suggested calling appellant=s mother
to obtain her consent, appellant said he could not remember his mother=s phone
number and then said that his mother did not actually have her own phone but used
his sister=s cell phone. Appellant
indicated that he had the cell phone number in his vehicle.  Trooper Wilson asked for appellant=s
consent to search the vehicle several more times before turning to the matter
of the vehicle=s ownership.[3]  








At 10:32 p.m., Trooper Wilson asked appellant, AHow do
we know [the car is] not stolen?@ and
returned to his patrol car where he called dispatch to  request a license plate check and a canine
unit,[4]
leaving Trooper Hatfield with appellant. 
During the brief four minutes that Trooper Wilson was in the patrol car,
the videotape shows Trooper Hatfield and appellant in front of the car talking
to one another.[5]


At 10:36 p.m., the videotape records Trooper
Hatfield announcing that he smells marijuana on appellant and appellant
admitting that he Asmoked some.@

[TROOPER HATFIELD]:  That=s what I=m smelling . . . like marijuana .
. . .  [Emphasis supplied.]

 

[APPELLANT]:  I don=t have any, but I smoked
some.

 








Immediately after this exchange, Trooper Wilson said that he was going
to issue appellant citations for driving with an expired license and for
driving without a valid registration. 
During the next two minutes, Trooper Wilson finished the process of
writing the citations and handed them to appellant for his signature.

Upon obtaining appellant=s
signature on the citations, Trooper Wilson informed appellant that he was not
free to leave because Trooper Wilson had called the canine unit to conduct a
free-air search of the vehicle.  As they
waited, Trooper Wilson read appellant his rights.  When he finished, appellant told the troopers
where to look for his marijuana.  The
troopers ultimately found a bag containing less than two ounces of marijuana
between the passenger seat and center console of the vehicle.

At trial, appellant moved to suppress the
marijuana when the State moved to enter it into evidence and again at the close
of appellant=s case.  The trial court denied the motion both
times.  A jury found appellant guilty of
possession of less than two ounces of marijuana and sentenced him to probation.  The trial court suspended the terms and
conditions of his probation pending the outcome of this appeal.

III. Standard of Review 








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.[6]   In reviewing the trial court=s
decision, we do not engage in our own factual review.[7]  At a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.[8]  Therefore, we give almost total deference to
the trial court=s rulings on (1) questions of
historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[9]   However, we review de novo the question of
whether a specific search or seizure is Areasonable@ under
the Fourth Amendment.[10]


IV.
Reasonable Suspicion

In his first issue, appellant
does not challenge the reasonableness of the initial traffic stop or Trooper
Wilson=s
decision to detain him long enough to perform sobriety tests.  Instead, he contends that the troopers were
required to issue his citations and release him as soon as they determined he
was not intoxicated.  According to
appellant, it was unreasonable for the troopers to prolong appellant=s
detention beyond this point.








A police officer may lawfully stop and detain a
person for a traffic violation.[11]  A routine traffic stop resembles an
investigative detention.[12]  During the detention, the officer may request
information concerning the driver=s
license, ownership of the vehicle, the driver=s
insurance information, the driver=s
destination, and the purpose of the trip.[13]  An officer may also conduct a warrant check to
determine whether the driver has any outstanding warrants,[14]
conduct a pat down search of the driver for weapons,[15]
and request the driver=s consent to search his vehicle.[16]  








An investigative detention must be temporary, and
the questioning must last no longer than is necessary to effectuate the purpose
of the stop.[17]  In determining whether the duration of an
investigative detention is reasonable, Acommon
sense and ordinary human experiences must govern over rigid criteria.@[18]

Once an officer concludes the investigation of
the conduct that initiated the stop, continued detention of a person is
permitted for the purpose of issuing a citation.[19]  A detention may also be prolonged beyond the
point when the purpose of the initial stop is complete if there is reasonable
suspicion to believe another offense has been or is being committed.[20]








AReasonable suspicion@ exists
if an officer has specific articulable facts that, when combined with rational
inferences from those facts, would lead him to reasonably suspect that a
particular person has engaged or is (or soon will be) engaging in criminal
activity.[21]  The officer must be able to articulate more
than an Ainchoate
and unparticularized suspicion or >hunch=@ of
criminal activity.[22]  The circumstances that raise suspicion that
illegal conduct is taking place need not be criminal in themselves; however,
the suspicious conduct relied upon by an officer must be sufficiently
distinguishable from that of innocent people under the same circumstance to
clearly, if not conclusively, set the suspect apart from them.[23]  The existence of reasonable suspicion is
determined by considering the totality of the circumstances.[24]













In this case, the purpose of the traffic stop was
not complete until the troopers had finished their investigation of all
possible offenses that they reasonably suspected appellant may have committed,
obtained all the information they needed to write the citations, and issued the
citations to appellant.  Following the
administration of the field sobriety tests, Troopers Wilson and Hatfield
proceeded to ask appellant legitimate questions related to matters within the
scope of the traffic stop, including whether he had outstanding warrants, where
he was going, why his vehicle was not registered, and who owned the vehicle.[25]  At the conclusion of this activity, Trooper
Wilson began the process of writing and issuing the citations.  All of these routine tasks were well within
the bounds of the initial traffic stop, and it was lawful for the troopers to
detain appellant for the purpose of completing them.  Two minutes before the stop was completed by
the issuance of the citations by Trooper Wilson, however, Trooper Hatfield
detected the odor of marijuana on appellant.[26]  This smell of marijuana gave the troopers
reasonable suspicion that another offense had been committed and justified
appellant=s continued detention for a
canine search after the purpose of the initial stop was complete.[27]


Therefore, we hold that appellant=s
detention after the field sobriety tests were administered was reasonable and
necessary to effectuate the purpose of the initial stop, and that the purpose
of the stop was not complete until the citations were issued to appellant.  Because the evidence shows that Trooper
Hatfield smelled marijuana on Appellant before the initial stop was complete,
the troopers possessed reasonable suspicion to prolong appellant=s
detention until a canine search could be conducted.  We overrule appellant=s first
issue.

VI. Consent

In his second issue, appellant argues that the
State failed to prove by clear and convincing evidence that his consent to the
search was voluntary.  








The State bears the burden of proving voluntary
consent by clear and convincing evidence.[28]   We will not reverse the trial court's
finding of valid consent unless it is clearly erroneous.[29]


To be valid, a consent to search must be positive
and unequivocal and must not be the product of duress or coercion, either
express or implied.[30]
Voluntary consent is not shown by a mere acquiescence to a claim of lawful
authority.[31]  Whether consent was given voluntarily is a
question of fact to be determined from the totality of the circumstances.[32]









Appellant did not give his consent to the vehicle
search in response to a request from Trooper Wilson or Trooper Hatfield.  In fact, the troopers did not ask for
appellant=s consent to search the vehicle
after issuing his citations.  Rather,
appellant volunteered to show them his marijuana when Trooper Wilson was
reading him his rights.  Trooper Wilson
continued reading appellant his rights, and, when he was through, appellant
again volunteered to show them where it was. 
Trooper Wilson explained that he could not let appellant reenter the
vehicle.  Appellant then told Trooper
Hatfield where to look.  Under these
circumstances, we hold that appellant=s
consent to the search was positive and unequivocal and not the product of
duress or coercion, either express or implied.[33]


Because appellant consented to the search of his
vehicle, the subsequently discovered evidence is not inadmissible as Afruit of
the poisonous tree.@[34]  Therefore, the trial court did not abuse its
discretion by denying appellant=s motion
to suppress.  We overrule appellant=s second
issue.








VII.
Conclusion

Having
overruled both of appellant=s
issues, we affirm the trial court=s
judgment.

 

JOHN CAYCE

CHIEF JUSTICE

 

EN BANC

 

WALKER, J. filed a
dissenting opinion in which LIVINGSTON and DAUPHINOT, JJ., joined.

 

PUBLISH

 

DELIVERED:  April 5, 2007











 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-140-CR

 

 

MICKEL
WAYNE LAMBETH, JR.                                             APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE COUNTY
COURT AT LAW OF HOOD COUNTY

 

                                              ------------

 

              DISSENTING OPINION ON
REHEARING EN BANC

 

                                              ------------








I respectfully dissent.  The general rule is that an investigative
stop can last no longer than necessary to effect the purpose of the stop.  Kothe v. State, 152 S.W.3d 54, 63
(Tex. Crim. App. 2004).  Once an officer
concludes the investigation of the conduct that initiated the stop, continued
detention of a person is permitted only if there is reasonable suspicion to
believe another offense has been or is being committed.  Davis v. State, 947 S.W.2d 240, 244
(Tex. Crim. App. 1997).  To establish
reasonable suspicion justifying a continued detention, an officer must be able
to articulate something more than an inchoate and unparticularized suspicion or
hunch.  See United States v. Sokolow,
490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989).








In other words, if a driver is stopped on
suspicion of driving while intoxicated, once the police officer determines that
the driver is not impaired and completes routine traffic stop dutiesCsuch as
checking the driver=s license and car registration
and running a computer check on that informationCthe
driver should be promptly released.  Kothe,
152 S.W.3d at 63-64.  At this point, the
traffic-stop investigation is fully resolved; the detention must end and the
driver must be permitted to leave.  Id.;
Herrera v. State, 80 S.W.3d 283, 289 (Tex. App.CTexarkana
2002, pet. ref=d).  An investigative detention must be temporary,
must last no longer than is necessary to effectuate the purpose of the stop,
and cannot be utilized as a Afishing
expedition@ concerning unrelated criminal
activity.  See Davis, 947 S.W.2d
at 243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117 S. Ct. 417, 422
(1996) (Ginsburg, J., concurring)); see also Terry v. Ohio, 392 U.S. 1,
18, 88 S. Ct. 1868, 1878 (1968) (stating that scope of search must be limited
because Aa search
which is reasonable at its inception may violate the Fourth Amendment by virtue
of its intolerable intensity and scope@).  AA stop
based on a violation of a traffic regulation will not justify detention to
await the arrival of a drug detection dog . . . [which] is necessarily a
greater imposition on a motorist than conducting a search immediately upon the
arousal of a reasonable suspicion.@ $217,590.00
In U.S. Currency v. State, 54 S.W.3d 918, 924 (Tex. App.CCorpus
Christi 2001, no pet.).

Texas Department of Public Safety troopers
stopped Appellant Mikel Wayne Lambeth, Jr. 
The entire stop was recorded on a videotape that was introduced into
evidence at the suppression hearing and is part of our record.  Trooper Randall Wilson testified that the
videotape truly and accurately depicts the stop.








The videotape shows the troopers stop Lambeth for
speeding.  During the next twenty-four
minutes the troopers talk with Lambeth, ask Lambeth where he is going and
request permission to search the vehicle, conduct field sobriety tests on
Lambeth (all of which he passes), conduct a pat down search of Lambeth (which
uncovers nothing), obtain the information they need to run computer checks on
Lambeth and on the vehicle, and to write Lambeth citations.  At this point in time the troopers had
concluded their investigation of the speeding offense and of all other possible
offenses that they reasonably suspected Lambeth may have committedCthose
being driving with an expired license, with no registration sticker, and while
intoxicated.  The troopers=
reasonable suspicions had been fully resolved; at this point the troopers
should have written any necessary citations to Lambeth, Lambeth=s
detention should have ended, and he should have been permitted to leave.  See Kothe, 152 S.W.3d at 63-64.

Although both troopers testified at the
suppression hearing, neither of them was able to articulate any facts they
possessed at this point in the stop that would give rise to any
suspicion that Lambeth had been or might be engaging in some other criminal
activity.  They both testified only that
they were suspicious because Lambeth was nervous and Aslightly
evasive in his answers,@ but they both agreed that
nervousness during a traffic stop was not uncommon.  In short, at this point in the stop the
troopers possessed nothing more than an inchoate and unparticularized suspicion
or hunch that Asomething@ might
be in Lambeth=s car because he was nervous and
had repeatedly declined to give them consent to search the car.  Nonetheless, Trooper Wilson decided to
continue Lambeth=s detention; he called dispatch
and requested Canine Officer Robert Young be sent to the scene, stating, AWe need
a dog to run on a vehicle.@








The troopers then continued to detain Lambeth to
wait for the arrival of the canine unit to conduct a Afree air@ search
of the vehicle.  It was during this
continued detention that Trooper Hatfield said he smelled marijuana on
Lambeth.  The majority claims that while
waiting for a canine unit the troopers continued to ask legitimate questions
related to matters within the scope of the traffic stop, including whether he
had outstanding warrants, where he was going, why his vehicle was not
registered, and who owned the vehicle. 
The problem with the majority=s
position is that the video tape of the stop establishes that these questions
had already been asked and answered.[1]  We cannot agree with the majority that the
repetitive questioning of Lambeth may justify his subsequent continued
detention to await a canine unit.








Lambeth=s
continued detention to await the arrival of a canine unit after the completion
of the traffic stop investigation and after the completion of the
investigations into the troopers= other
reasonable suspicionsCthat Lambeth was driving with an
expired license, had no registration sticker, and was driving while intoxicatedCviolated
his Fourth Amendment rights.  See
Kothe, 152 S.W.3d at 63-64; Davis, 947 S.W.2d at 244‑45.  When Trooper Hatfield said he smelled
marijuanaCapproximately twenty-four
minutes after the troopers stopped Lambeth for speeding, after the troopers had
completed their investigation of all possible offenses they reasonably believed
Lambeth could have been committing, after the troopers had obtained all the
information they needed to write Lambeth citations, and after Trooper Wilson
had called for a canine unitCthe stop
should have already been concluded and citations should have already been
issued.  Because Lambeth=s
detention should have ended prior to the point in time when Trooper Hatfield
said that he smelled marijuana on Lambeth, this fact cannot retroactively
justify Lambeth=s unauthorized, continued
detention.  See Davis, 947 S.W.2d
at 244‑45; $217,590.00 In U.S. Currency, 54 S.W.3d at 924
(explaining that traffic stop will not justify continued detention to await the
arrival of a drug detection dog).  Cf.
Coleman v. State, 188 S.W.3d 708, 719 (Tex. App.CTyler
2005, pet. ref=d) (holding officer=s
articulated reasonable suspicion justified appellant=s
continued detention to await canine unit when officer suspected appellant of
drug trafficking based on appellant=s prior
arrests for drug offenses, appellant=s lie about
his prior criminal history, and appellant=s
possession of small jeweler=s bags
used in cocaine trafficking), cert. denied, 127 S. Ct. 502 (2006).

I would sustain Lambeth=s first
issue and hold that the trial court abused its discretion by misapplying the
law to the undisputed facts reflected in the videotape and confirmed by the
troopers=
testimony.  See McQuarters v. State,
58 S.W.3d 250, 258 (Tex. App.CFort
Worth 2001, pet. ref=d) (reversing trial court=s denial
of motion to suppress and holding officer did not have reasonable suspicion to
detain defendant after traffic stop for canine search).  Because the majority does not, I dissent.

 

 








SUE
WALKER

JUSTICE

 

LIVINGSTON and DAUPHINOT,
JJ., joined.

 

PUBLISH

 

DELIVERED: April 5, 2007











[1]The stop was videotaped
by a camera mounted on the patrol car and audiotaped by a microphone worn by
Trooper Wilson.  The tape was admitted
into evidence, and we have viewed it as part of our review of the record. 





[2]Appellant indicated that
the object in question was a perfume bottle. 





[3]During this exchange,
Trooper Hatfield took Trooper Wilson aside and informed him that there was an
object in appellant=s vehicle that he could
not identify.  His concern prompted a pat
down search of appellant.  Trooper Wilson
did not find anything suspicious on appellant=s person.





[4]Trooper Wilson told the
canine officer that appellant had denied consent to a search and that possibly Asomething@ was in the vehicle.  Because the request for a canine unit
occurred before the initial stop ended, it was not necessary for Trooper Wilson
to have possessed separate reasonable suspicion at the time he made the
call.  See State v. Parnell,
Nos. 03-00-00156-CR, 03-00-00157-CR, 2000 WL 1124964, at *7 & n.7 (Tex.
App.CAustin, August 10, 2000,
pet. ref=d) (not designated for
publication). 





[5]The conversation between
Trooper Hatfield and appellant during this four-minute interval is inaudible
because the microphone was attached to Trooper Wilson. 





[6]Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).





[7]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no
pet.). 





[8]State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000), modified on other grounds, State v. Cullen,
195 11 3d 696 (Tex. Crim. App. 2006).  





[9]Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861‑62.





[10]See Ornelas v. United
States, 517 U.S. 690, 691, 116 S. Ct. 1657, 1659 (1996); Kothe v. State,
152 S.W.3d 54, 62 (Tex. Crim. App. 2004).





[11]See Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992); Mohmed v. State, 977 S.W.2d 624, 628 (Tex. App.CFort Worth 1998, pet. ref=d).





[12]Berkemer v. McCarty, 468 U.S. 420, 439, 104
S. Ct. 3138, 3149‑50 (1984); State v. Cardenas, 36 S.W.3d 243, 246
(Tex. App.CHouston [1st Dist.] 2001,
pet. ref=d).





[13]Mohmed, 977 S.W.2d at 628. 





[14]Smith v. State, 840 S.W.2d 689, 692
(Tex. App.CFort Worth 1992, pet. ref=d); Petty v. State,
696 S.W.2d 635, 639 (Tex. App.CDallas 1985, no pet.).





[15]See Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct.
1868, 1883 (1968).





[16]See Florida v. Bostick,
501 U.S. 429, 435, 111 S. Ct. 2382, 2386 (1991); Hunter v. State, 955
S.W.2d 102, 104 (Tex. Crim. App. 1997).





[17]Florida v. Royer, 460 U.S. 491, 500, 103
S. Ct. 1319, 1325 (1983); Balentine v. State, 71 S.W.3d 763, 770‑71
(Tex. Crim. App. 2002); Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim.
App. 1997).





[18]United States v. Sharpe, 470 U.S. 675, 685, 105
S. Ct. 1568, 1575 (1985).





[19]Kothe v. State, 152 S.W.3d 54, 65 n.43
(Tex. Crim. App. 2004) (citing with approval United States v. Wellman,
185 F.3d 651, 656 (6th Cir. 1999), which holds that prolonging a detention for
the purpose of issuing the citation is Awell within the bounds of the initial stop@); see Coleman v.
State, 188 S.W.3d 708, 719 (Tex. App.CTyler 2005, pet. ref=d) (holding that purpose
of stop was complete upon the issuance of the citation), cert. denied,
127 S. Ct. 502 (2006).





[20]United States v. Brigham, 382 F.3d 500, 510-11
(5th Cir. 2004); Davis, 947 S.W.2d at 245; McQuarters v. State, 58
S.W.3d 250, 256 (Tex. App.CFort Worth 2001, pet. ref=d).





[21]Terry, 392 U.S. at 21, 88 S. Ct.
at 1880; Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); McQuarters,
58 S.W.3d at 255. 





[22]Illinois v. Wardlow, 528 U.S. 119, 124, 120
S. Ct. 673, 676 (2000).





[23]Davis, 947 S.W.2d at 242; Crockett
v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).





[24]Garcia, 43 S.W.3d at 530; McQuarters,
58 S.W.3d at 255.





[25]See Mohmed, 977
S.W.2d at 628 (holding that officers may question motorists about their
license, registration, and travel plans); Smith, 840 S.W.2d at 692; Petty,
696 S.W.2d at 639 (both holding that officers may check for outstanding
warrants during a traffic stop).





[26]We decline appellant=s invitation to review
the credibility of Trooper Hatfield=s detection of the marijuana odor de novo.  Although the trial court did not make express
findings of fact, we will assume that the trial court found that Trooper
Hatfield smelled marijuana on appellant because that finding supports the court=s decision to deny
appellant=s motion to suppress and
it is supported by the record.  See
Carmouche, 10 S.W.3d at 328.  As a
finding of historical fact, we give it almost total deference.  See Johnson, 68 S.W.3d at 652‑53;
Best, 118 S.W.3d at 861‑62.





[27]See Coleman, 188
S.W.3d at 719 (holding that, although the investigation of the traffic offense
that served as the basis for the stop was complete when the officer issued the
citation, the officer=s continued detention of
the appellant thereafter for a canine search was lawful because, during the
investigation of the traffic offense, the officer had developed a reasonable
suspicion that the appellant had committed a drug-related offense).





[28]Carmouche, 10 S.W.3d at 331; Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); State v. Ibarra,
953 S.W.2d 242, 245 (Tex. Crim. App. 1997).





[29]United States v. Dortch, 199 F.3d 193, 201 (5th
Cir. 1999); United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993).





[30]See Carmouche, 10 S.W.3d at 331; Allridge
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), cert. denied,
510 U.S. 831 (1993).





[31]Royer, 460 U.S. at 497, 103 S.
Ct. at 1324; Carmouche, 10 S.W.3d at 331.





[32]See Ohio v. Robinette, 519 U.S. 33, 40, 117 S.
Ct. 417, 421 (1996); Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.
Ct. 2041, 2048 (1973); Reasor, 12 S.W.3d at 818.





[33]See Carmouche, 10 S.W.3d at 331; Allridge,
850 S.W.2d at 493.





[34]See Segura v. United
States,
468 U.S. 796, 804, 104 S. Ct. 3380, 3385 (1984).





[1]For example, one minute into the stop,
before Lambeth had even exited the vehicle Trooper Wilson states, AYou don=t have it [the vehicle]
registered? . . . AWhy is it not registered?@  Lambeth states, AHere is the title.@  Two minutes into the stop, Trooper Wilson can
then be heard calling in Lambeth=s license plate. 
And eight minutes into the stop dispatch can be heard providing the
requested information back to Trooper Wilson. 
And  after the canine unit had
been called Trooper Wilson asks Lambeth what his address is.  But the video tape shows Trooper Wilson
asking for and writing down Lambeth=s address on a form on his clipboard
approximately eleven minutes into the stop.