Johnny Wayne PETTY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–84–01303–CR, 05–84–01304–CR.

Court of Appeals of Texas,
Dallas.

July 24, 1985.

S. Michael McColloch, David W. Coody, Bruner, McColl, McColloch & McCurley, Dallas, for appellant.

Celia V. Barr, Asst. Dist. Atty., Dallas, for appellee.

Before CARVER, GUILLOT and DEVANY, JJ.

DEVANY, Justice.

Johnny Wayne Petty appeals his conviction for aggravated assault and the sentence imposed after the trial court revoked his probation in an earlier robbery case. Appellant contends that his aggravated assault conviction must be reversed because the State failed to prove an element of the offense. Concerning the sentence in the robbery case, he complains that the trial court considered matters unsupported by any evidence when it assessed his punishment. We affirm the trial court's judgments in both cases.

### Aggravated Assault

On September 13, 1984, two Dallas police officers responded to a disturbance complaint. When they arrived at the scene, three agitated witnesses reported that a man had been yelling at them. The officers testified that the witnesses told them that he had called them prostitutes and had asked one of them to "work for him" as "his girlfriend." The witnesses told the officers that they had refused his solicitations and that appellant had refused their repeated requests to leave them alone.

During this conversation, one of the witnesses saw appellant walking on the other side of the street. All three witnesses identified him as the man who harassed them; therefore, the officers decided to question appellant and to instruct him not to bother the three women again. However, appellant ignored the officers' requests to stop and rapidly walked between two buildings. The officers followed, eventually detained him, and conducted a patdown search for weapons. According to the officers, appellant reluctantly surrendered his identification. While one officer questioned appellant about the disturbance, the other requested by radio a check for outstanding arrest warrants. The officers testified that the warrant check was a part of their routine procedure during an investigatory stop. One of the officers stated at trial that they did not intend to arrest appellant for the disturbance when they requested his identification. Three to five minutes after the officers requested the check, however, they learned of a warrant for appellant's arrest for violating the conditions of his probation in the robbery case. The officers told appellant that he was under arrest, handcuffed him, and attempted to place him in the back seat of their patrol car. Appellant struggled and kicked one of the officers in the groin. Consequently, appellant was convicted by the court of aggravated assault.

Under sections 22.01 and 22.02 of the Penal Code, a person is guilty of aggravated assault if he intentionally, knowingly or recklessly causes bodily injury to a peace officer "when the person knows or has been informed the person assaulted is a peace officer ... [who] is lawfully discharging an official duty." Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp.1985). Appellant claims that the officer assaulted was not *lawfully* discharging an official duty when the assault occurred because the arrest resulted from an unconstitutional detention. He concludes, therefore, that his arrest was illegal because it resulted from an unreasonable seizure in violation of the fourth amend-

ment.[1] U.S. Const. amend. IV. We hold the detention did not violate the fourth amendment and that the officer was acting lawfully when he arrested appellant.

■■■ When the officers restricted appellant's freedom of movement and requested his identification, they seized appellant for purposes of fourth amendment analysis. *Terry v. Ohio,* 392 U.S. 1, 16, 19, 88 S.Ct. 1868, 1877, 1878, 20 L.Ed.2d 889 (1968); *Ebarb v. State,* 598 S.W.2d 842, 850 (Tex.Crim.App.1980) (on rehearing); *see also, Dunaway v. New York,* 442 U.S. 200, 208–12, 99 S.Ct. 2248, 2254–56, 60 L.Ed.2d 824 (1979). The seizure of appellant was reasonable under the fourth amendment if the "officer's action was justified at its inception," and "was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1878–79. An investigatory stop is "justified at its inception" if the law enforcement agents can reasonably infer from specific, articulable facts that the person detained is committing, is preparing to commit, or has recently committed a crime. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1879; *Gearing v. State,* 685 S.W.2d 326, 328 (Tex.Crim.App.1985); *see also United States v. Hensley,* — U.S. —, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). Based on the disturbance complaint, the conversation with the witnesses at the scene, and the witnesses' identification of appellant,[2] the officers had reason to suspect that appellant had committed and might again commit the offenses of disorderly conduct and solicitation of prostitution. *See* Tex.Penal Code Ann. §§ 42.-01(a)(1) & (5), 43.02(a)(2) (Vernon Supp. 1985). These circumstances warranted stopping appellant to investigate the situation and to discourage him from creating any further disturbances. Therefore, the initial seizure of appellant was not unreasonable and did not violate the fourth amendment.

Even though the investigatory stop was "justified at its inception," appellant argues that it became unreasonable because the officers held him *solely* to check for arrest warrants, a purpose which he claims is not "reasonably related in scope to the circumstances ... justif[ying] the interference." Appellant reasons that, since the officers had already decided not to arrest him for the disturbance, they could not legally detain him pending the completion of the check unless they had probable cause to believe that there was a warrant for his arrest. Appellant, further reasons that, since his continued detention was illegal, the resulting arrest was illegal; therefore, he concludes that the officer was not lawfully discharging his duty when he was assaulted.

■■■ We recognize that an investigative stop can last no longer than necessary to effect the purpose of the stop absent probable cause to arrest the person or the person's consent.[3] *See Florida v. Royer,*

---

1. Actually, appellant's argument presents two questions: whether the police detention violated the fourth amendment and, if so, whether the unconstitutionality of the stop would render all subsequent police activities, though themselves permissible, "unlawful" for purposes of Penal Code section 22.02. Because we hold that the investigatory stop did not violate the fourth amendment, we need not decide and express no opinion on the latter question.

2. Cf. *Ablon v. State,* 537 S.W.2d 267, 268–69 (Tex.Crim.App.1976) (police radio call may provide facts sufficient to authorize stop); *Mann v. State,* 525 S.W.2d 174, 175–76 (Tex.Crim.App. 1975) (anonymous telephone call may provide facts sufficient to authorize stop).

3. An investigatory stop may be so prolonged that it is unreasonable. *E.g., Place v. United*

*States,* 462 U.S. 696, 103 S.Ct. 2637, 2640, 77 L.Ed.2d 110 (1983) (holding luggage for ninety minutes for check by trained narcotics dog). Appellant does not claim that the stop in this case was so prolonged that it became unreasonable. *Cf., People v. McGaughran,* 25 Cal.3d 577, 601, P.2d 207, 159 Cal.Rptr. 191 (1979) (approved warrant checks generally but found detention unreasonable when it extended ten minutes after traffic citation was issued solely to allow warrant check to be completed). The record is silent on the duration of the stop. However, one of the officers testified that they learned of the warrant for appellant's arrest some three to five minutes after placing the request. Thus, we assume that no more than a few minutes elapsed from the time appellant was stopped until the time he was arrested.

460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). However, appellant's claim incorrectly assumes that at some point during the stop all legitimate investigation of the disturbance ended and that the officers held him only to allow the warrant check to be completed. One officer testified that appellant was held until the check was finished because the officers "had to be sure [appellant] had [identification] and was the correct person." Apparently, the warrant check was an incident of the officer's request for verification of appellant's identification and not, as appellant would have us believe, an inquiry distinct from the verification procedure. Determining identity and preserving the status quo while obtaining more information are legitimate reasons for which law enforcement officers may detain a person who is reasonably suspected of criminal activity. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983); *see also Hensley*, 105 S.Ct. at 683, 684; *see e.g., United States v. Sharpe*, ── U.S. ──, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (approving twenty minute stop in which officers detained suspect pending arrival of drug enforcement agent). Thus, we conclude that appellant's detention was not prolonged *solely* for some reason not directly related to the disturbance investigation.

Nevertheless, we must still decide whether checking for outstanding arrest warrants during an otherwise valid investigatory stop is so unrelated in scope to the purpose of the detention that it renders the stop unconstitutional. While neither party cites any case discussing this question, and our research reveals no controlling Texas case, we are guided by the Supreme Court's opinion in *Michigan v. Summers*, 452 U.S. 692, 701 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981). Although *Summers* involved the detention of a homeowner during the execution of a search warrant, Justice Stevens, writing the majority opinion, discussed the legitimate purposes for investigatory stops and quoted with approval from Professor La

Fave's treatise on the fourth amendment. In a portion of the passage quoted by the Supreme Court, Professor La Fave observes:

> It is clear that there are several investigative techniques which may be utilized effectively in the course of a *Terry* -type stop. The most common is interrogation, which may include both a request for identification and inquiry concerning the suspicious conduct of the person detained. Sometimes the officer will communicate with others, either police or private citizens, in an effort to verify the explanation tendered or to confirm the identification or determine whether a person of that identity is *otherwise* wanted.... There is no reason to conclude that any of the investigative methods of the type just listed are inherently objectionable....

3 W. La Fave, *Search and Seizure* § 9.2, pp. 36–37 (1978) (footnotes omitted) (emphasis added). Either through independent analysis or in reliance on this portion of Professor La Fave's treatise, many jurisdictions have approved warrant checks conducted by the police during otherwise valid investigatory stops. *Florida v. Bell*, 382 So.2d 119 (Fla.Dist.Ct.App.1980); *Biggers v. Georgia*, 162 Ga.App. 163, 290 S.E.2d 159, 160–61 (1982); *Illinois v. Ellis*, 113 Ill.App.3d 314, 68 Ill.Dec. 885, 446 N.E.2d 1282 (1983); *Ohio v. McFarland*, 4 Ohio App.3d 158, 446 N.E.2d 1168, 1172 (1982); *Rhode Island v. Demasi*, 448 A.2d 1210, 1213 (1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *Vermont v. Hewey*, 144 Vt. 10, 471 A.2d 236, 238 (1983); *cf. People v. McGaughran*, 25 Cal.3d 577, 601 P.2d 207, 159 Cal.Rptr. 191 (1979) (warrant check permissible during valid stop if stop not extended for just that purpose); *Colorado v. Villiard*, 679 P.2d 593, 597 (Colo.1984) (stating, in *dicta*, that officers could detain suspect until they checked registration of car he was driving); *Louisiana v. Fauria*, 393 So.2d 688 (La. 1981) (verification of identification is inherent power during valid investigatory stop). Indeed, we have found no case holding an

investigatory stop illegal solely because of-ficers requested a warrant check.

 "Reasonableness" is the standard with which all governmental intrusions on one's privacy and freedom of physical movement must comply. U.S. Const. amend. IV. In determining what is reason-able, courts must consider the "totality of the circumstances," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), and balance the charac-ter of the official intrusion and its justifica-tion against the individual's right to be left alone. *See, e.g., Summers*, 452 U.S. at 699–702, 101 S.Ct. at 2592–94. In light of the foregoing authorities and the Supreme Court's approval of Professor La Fave's analysis, we cannot say under the circum-stances in the present case that it was unreasonable for law enforcement authori-ties to check for outstanding arrest war-rants while confirming appellant's identifi-cation. With the advent of computerized data storage, the length of time required to perform this additional function is usually negligible. The slight additional intrusion under ordinary circumstances is far out-weighed by the State's interest in appre-hending those persons whom it has proba-ble cause to believe have committed a crime. *Cf. Hensley*, 105 S.Ct. at 684 (per-missible to hold suspect long enough to determine if arrest warrant had been is-sued where suspect stopped on the basis of wanted flyer supported by reasonable sus-picion). Since nothing in the record shows that the stop in this case was *unnecessar-ily* protracted, *Sharpe*, 105 S.Ct. at 1575–1576, appellant's ground of error is over-ruled.

### Robbery Sentence

In his two remaining grounds of error, appellant seeks to have his sentence re-duced in the robbery case. According to appellant, the trial court based the sen-tence on two probation violations that were unsupported by the evidence. We find no merit in appellant's contentions.

In the original trial of this case, appellant pleaded guilty pursuant to a plea bargain.

Under the terms of this agreement, the trial court assessed eight years imprison-ment as punishment but suspended imposi-tion of this sentence by placing appellant on probation. *See Teel v. State*, 432 S.W.2d 911, 912 (Tex.Crim.App.1968); Tex. Code Crim.Proc.Ann. art. 42.12, § 1 (Ver-non Supp.1985). The State's motion to re-voke alleged several violations. That mo-tion was considered in the same proceeding in which appellant was convicted of the aggravated assault discussed above. The trial court found that appellant committed all of the violations alleged in the motion, revoked appellant's probation and sen-tenced him to eight years as assessed un-der the plea bargain agreement.

 The appellant does not contest that the evidence supported all of the other alleged probation violations. Since only one violation is necessary to revoke proba-tion, *Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App.1980), appellant does not challenge the revocation order. Instead, appellant complains that the trial court im-properly considered two probation viola-tions unsupported by any evidence when it imposed the eight-year sentence.

The first violation that appellant claims the trial court improperly considered was the aggravated assault which has been ful-ly discussed in the preceding ground of error. The second violation that appellant claims is unsupported by the evidence is also an aggravated assault on a peace offi-cer in an unrelated incident in which appel-lant allegedly kicked another arresting offi-cer in the head after that officer placed him in his patrol car. Appellant claims that there was no evidence of bodily injury as required under section 22.02 of the Penal Code. The officer did not testify that the blow inflicted physical pain or otherwise injured him. However, we need not decide whether the evidence in the second viola-tion was sufficient to prove bodily injury because the appellant has failed to show that the trial court abused its discretion by not reducing the punishment originally as-sessed. *See* Tex.Code Crim.Proc. art. 42.-12, § 8(a) (Vernon Supp.1985) (authorizing

trial court to reduce sentence if in the best interests of society and the probationer).

Nothing in the record reflects that appellant requested a sentence reduction. Further, the trial court imposed the sentence that appellant agreed to in the plea bargain in the event he violated the terms of his probation. *Cf. Ex Parte Williams,* 637 S.W.2d 943, 947 (Tex.Crim.App.1982) (treating plea-bargain as a contract). There is no showing that the trial court would have reduced the sentence if fewer violations had been found. The trial court had sufficient evidence to support other violations, including another aggravated assault. Under the totality of the circumstances of this case, we cannot say that the trial court abused its discretion by imposing the full eight-year sentence. *See Cannon v. State,* 537 S.W.2d 31, 32 (Tex.Crim. App.1976). We overrule these grounds and affirm the trial court's judgments.