Stephen Lewis SMITH, Appellant,

v.

The STATE of Texas, State.

No. 2–91–177–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 7, 1992.

Discretionary Review Refused
Feb. 10, 1993.

Joanne M. Shipley, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., David C. Colley and Paige Miller, Asst. Dist. Attys., Denton County, Robert Huttash, State Pros. Atty., Austin, for appellee.

Before HILL, FARRIS and ASHWORTH (Retired), JJ.

## OPINION

HILL, Justice.

Stephen Lewis Smith appeals his conviction by a jury of the offense of unauthorized use of a motor vehicle. The jury, finding both enhancement paragraphs in the indictment to be true, assessed his punishment at life in the Texas Department of Corrections, Institutional Division.

Smith contends in four points of error that the trial court erred in: (1) denying his motion to suppress evidence on the ground that there were insufficient facts to justify his detention and search, and refusing to suppress a certificate of title that was seized as a result of the illegal detention and arrest; (2) refusing to permit him to cross-examine one of the witnesses regarding the possibility that she could have been arrested and charged with this offense if she had failed to report the car stolen and if she had refused to testify; (3) not striking the detaining officer's testimony when, despite a motion for discovery, a hearing and order thereon, and a request for copies of reports after the police officer testified, a copy of the officer's report was not given to Smith at the time of the motion to suppress but was later delivered to him after the officer testified at trial, resulting in prejudice to him; and (4) failing to grant a mistrial when the district attorney commented in argument on his right to remain silent.

We affirm because: (1) we hold that facts known to the detaining officer were sufficient to justify the officer's investigative stop of Smith; (2) the question that Smith sought to ask the witness was based on a premise, that the witness could be charged with the unauthorized use of a motor vehicle, that has no basis in the facts of this case; furthermore, the question called for a legal conclusion on the part of the witness; (3) even if the officer's report was improperly suppressed, Smith received it in time to put it to effective use at trial; and (4) the jury argument of which Smith complains merely contrasted his plea of not true to the enhancement paragraphs with his plea of true to one of the paragraphs in an earlier case and was not a comment on Smith's failure to testify.

Smith contends in point of error number one that the trial court erred in denying his motion to suppress evidence on the ground that there were insufficient facts to justify his detention and search. He particularly

complains of the trial court's failure to suppress a certificate of title that was seized as a result of his detention and arrest, a title that appeared to be altered or forged.

On September 24, 1988, Officer Edward Byrum, an officer of the Carrollton Police Department, went to a Sears Surplus store in Carrollton in response to a dispatch. He testified at a hearing on Smith's motion to suppress that the dispatch indicated that Smith was trying to pass some forged checks or something of that nature. He said that when he arrived at the scene the Sears manager pointed out Smith to him and said that supposedly he was involved in some of the checks being passed around there at Sears Surplus.

Officer Byrum approached Smith, who was standing outside of the store in the store parking lot. He asked Smith to identify himself, which he did by producing his Texas driver's license. Officer Byrum explained the circumstances to Smith, telling him why he was there and that the officer knew he was with a female companion who was inside the store. Officer Byrum asked Smith some questions, but he could not recall what they were about.

When the female companion emerged from the store, the store manager identified her as one who was supposedly in the store passing checks or who had them in her possession. At that time, approximately ten to fifteen minutes after Officer Byrum first detained Smith, he checked by radio to see if there were warrants outstanding against either Smith or the companion. The dispatcher told Officer Byrum that Smith was wanted out of the Denton County Sheriff's Office, and that they would notify him once they confirmed the warrant.

Officer Byrum said at the hearing that he could not remember exactly how long it took for the dispatcher to confirm the warrant, but that it could have ranged anywhere from five to thirty minutes.

Officer Byrum indicated that after the warrant was confirmed he placed Smith under arrest. Although he may have previously performed a pat down search of Smith, Officer Byrum, at the time of arrest, conducted a full search at the scene and again at the jail. The search revealed a quantity of methamphetamine, pertinent to another case, as well as a Texas title belonging to a Corvette. As we have previously noted, the title appeared to be altered or forged.

Prior to arresting Smith, Officer Byrum detained him while he obtained more information. In order to justify an investigative stop, officers must have specific, articulable facts, which, in the light of their experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion. *Anderson v. State*, 701 S.W.2d 868, 873 (Tex.Crim.App.1985). Mere suspicion is not enough. *Id.* The articulable facts used by the officers must create a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *Id.*

In this case, the facts related to Officer Byrum indicated that some unusual criminal activity related to checks was occurring inside the store and that Smith was involved. We hold that these facts were sufficient to justify the officer's investigative stop of Smith.

Smith argues that the facts known to Officer Byrum were insufficient to justify his temporary detention because all the officer knew was that there was a woman passing checks and that Smith was with the woman. However, as we have related, Officer Byrum had been informed by his dispatcher that Smith was trying to pass some forged checks and, upon his arrival at Sears Surplus, the store manager told him that Smith was involved with checks being passed there. Consequently, the information known to the officer was that Smith was passing bad checks.

Smith also refers to facts shown by evidence other than at the hearing on the motion to suppress, but the ruling of the trial court should be governed by the evi-

dence presented at the time of the hearing rather than at some other point in the trial. Smith later reurged his motion to suppress, but solely for the reason that he was not provided with a portion of a police report on a timely basis. Smith did not ask for a new ruling on the motion to suppress as to the validity of his detention, arrest, and search.

The portion of the police report that Smith did not receive prior to the time of the trial on the merits showed that Smith was with his companion when she attempted to cash a bad check at Sears Surplus on the occasion in question and that he himself had recently forged checks there. We hold that even if that evidence is considered as part of the evidence on the hearing of Smith's motion to suppress, we would still hold that there were sufficient facts to justify Officer Byrum's investigative stop of Smith.

■ It was not unreasonable for Officer Byrum, as part of his investigative stop, to check for outstanding warrants. *See Petty v. State,* 696 S.W.2d 635, 639 (Tex.App.— Dallas 1985, no pet.).

■ Smith correctly argues that an investigative stop can last no longer than necessary to effect the purpose of the stop absent probable cause to arrest the person or the person's consent. *See id.* at 637. In this case only ten or fifteen minutes elapsed from the time that the officer first confronted Smith until the officer learned that there was an outstanding warrant for him. We are unable to say that under the circumstances this was an unreasonable period of time for the officer to attempt to sort through what was going on at the Sears Surplus store and make a reasonable determination as to Smith's involvement.

■ Smith complains of the five to thirty minutes that it took from the time Officer Byrum learned that there was an outstanding warrant against Smith until the warrant was confirmed. We hold that it is significant that this time elapsed only after Officer Byrum learned that there was an outstanding warrant for Smith. We do not find it unreasonable for Officer Byrum to

take a few minutes to confirm the existence of the warrant, once he learned of it, in order to prevent an unlawful arrest of Smith. This is especially true in view of the possibility of misidentification due to the detainee having the common name of "Stephen Smith." We overrule point of error number one.

Smith urges in point of error number two that the trial court erred by refusing to permit him to cross-examine one of the witnesses regarding the possibility that she could have been arrested and charged with this offense if she had failed to report the car stolen and if she had refused to testify.

The car in question in this case is a 1985 Chevrolet Corvette. The car was leased by Sylvia Gausco in 1985 for her son Chris Smith, no relation to Stephen Lewis Smith, to be used in a business they jointly operated. The car was financed through Security Pacific Auto Finance Company. Despite contractual prohibitions, Chris subleased the car to Laura Brown Dittner.

Dittner had responded to a newspaper ad respecting the lease of the car. She thought that Chris owned the car and was unaware of the original lease. Dittner quit making payments on the car when she became unable to do so. In the meantime, Security Pacific contacted Gausco concerning the payments that had not been made. Dittner had since moved to Oklahoma.

Late one evening, Gausco was contacted by Dittner's mother who told her that the vehicle had been left at a truck stop in Denton. When Gausco went to the truck stop the vehicle was not there. Approximately one month later Lewisville police officers observed Smith driving the vehicle. When the vehicle was later found abandoned in a nearby parking lot, fingerprints lifted from the car matched those of Smith. When Smith was later arrested at the Sears Surplus Store, as discussed above, officers found a certificate of title for a 1985 Chevrolet Corvette that, as we have said, appeared to be altered or forged.

■ Smith complains that he was not allowed to ask Laura Brown Dittner if she knew that Security Pacific could have had

charges filed against her for unauthorized use of a motor vehicle. The evidence shows that Laura Brown Dittner operated the vehicle under a lease from Chris Brown, who she thought to be the owner, and who was a lessee of the vehicle. A charge of unauthorized use of a motor vehicle would require that the actor operate the motor vehicle knowing that he or she was doing so without the consent of the owner. *Gardner v. State,* 780 S.W.2d 259, 263 (Tex.Crim.App.1989). Consequently, under our facts, the premise of the question, that Dittner could have been charged with the unauthorized use of a motor vehicle, has no basis in these facts. We also note that the question called for a legal opinion on the part of the witness. We therefore hold that the trial court did not err in sustaining the objection to the question.

Smith states that the trial court would not permit him to ask Dittner whether she could have been charged with unauthorized use of a motor vehicle if she had not reported the vehicle as stolen. He refers us to ten pages of the statement of facts. We have examined that portion of the statement of facts and find the question to be as we have characterized it above, not as characterized by Smith. In any event, the determination would be the same for the reason stated above even if the question had been as characterized by Smith. We overrule point of error number two.

Smith insists in point of error number three that the trial court erred by not striking Officer Byrum's testimony when, despite a motion for discovery, a hearing and order thereon, and a request for copies of his police report, a copy of his report was not given to Smith until after Officer Byrum testified at trial. We have previously outlined the contents of the additional report.

Officer Byrum testified that due to the time factor that he was not aware of the report even though he had written it. The State's attorney indicated that she had not previously seen the report.

▆▆▆ The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963); *Givens v. State,* 749 S.W.2d 954, 957 (Tex.App.—Fort Worth 1988, pet. ref'd, mand. motion den.). If the accused received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been. *Id.* The record in this case reflects that Smith received the material in time to put it to effective use at trial. We overrule point of error number three.

▆▆▆ Smith asserts in point of error number four that the trial court erred by failing to grant a mistrial when the district attorney commented in argument on his right to remain silent.

Smith pled "not true" to the two enhancement paragraphs in the indictment. Previously, in a Dallas County case, Smith had pled "true" to one of the prior convictions alleged in the enhancement paragraphs in this case. In the jury argument at the punishment phase of Smith's trial, the prosecutor pointed out the discrepancy between Smith's plea of "true" to the prior conviction in Dallas County and his plea of "not true" to the same allegation in this case.

▆▆▆ To determine whether the prosecutor's comment violated TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979) and constituted an impermissible reference to the failure of the accused to testify, we must consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify. *See Banks v. State,* 643 S.W.2d 129, 134 (Tex.Crim.App.1982), *cert. denied,* 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983); *Milton v. State,* 620 S.W.2d 115, 116 (Tex.Crim.App.1980) (opinion on reh'g). When viewed from the standpoint of the jury, the implication that the language used by the prosecutor made reference to

the accused's failure to testify must be a necessary one. *Todd v. State*, 598 S.W.2d 286, 294 (Tex.Crim.App. [Panel Op.] 1980). We hold that the prosecutor was merely pointing out the variance between Smith's plea in this case and his plea in a prior case. We see no reference at all to his failure to testify in this case. We overrule point of error number four.

The judgment is affirmed.