Affirmed and Memorandum Opinion filed October 18, 2007








Affirmed and Memorandum Opinion filed October 18, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00531-CR

____________

 

ROBERT WARREN HILDEBRAND, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 5

Harris County, Texas

Trial Court Cause No. 1305725

 



 

 M E M O R A N D U M  O P I N I O N

Challenging his conviction for the misdemeanor offense of
driving while intoxicated, appellant Robert Warren Hildebrand asserts that the
trial court erred in denying his motion to suppress.  We affirm. 

I.  Factual and Procedural
Background








Around 2:00 a.m. on May 27, 2005, Marci Massengalle was
pulling into her subdivision in Baytown when a red truck sped down the road,
hit the curb, and ran into a parked Suburban.  The truck fled the scene. 
Massengalle called 9-1-1 and followed the truck until the police arrived.

 Baytown Police Officer Russell Krutsinger responded and
immediately went to the scene to locate the red truck.  He spotted a red Chevy
pick-up truck which matched the description given over the dispatch.  After
noticing the truck swerving in its own lane of traffic, Officer Krutsinger
activated his video camera and emergency lights and initiated a traffic stop. 
He requested the individual (appellant) to exit the vehicle.  Officer
Krutsinger noticed that when appellant exited the vehicle, he used the truck
for support, which gave the officer an indication that appellant may have been
drinking.  Officer Myron Hellman arrived at the scene around the same time. 
Officer Hellman, however, did not get involved with the investigation of appellant
at this time, but stayed back to interview Massengalle regarding the
hit-and-run and to determine whether there was any damage to the Suburban. 

Officer Krutsinger asked appellant if he had been drinking,
and appellant replied that he had consumed approximately three, twenty-ounce
beers.  According to standard procedure for officer safety, Officer Krutsinger
patted appellant down.  He felt an object in appellant=s pocket.  He
asked appellant what it was, and appellant replied that it could be a lighter. 
After reaching into appellant=s pocket, Officer Krutsinger confirmed
this fact.  Appellant thereafter willingly performed several field sobriety
tests, which were captured on videotape.  At the conclusion of the tests,
Officer Krutsinger handcuffed and placed appellant in the backseat of the
patrol car in order to wait for a tow truck to come for appellant=s vehicle. 
Officer Hellman went back to the police station. 

 After the tow truck arrived, Officer Krutsinger brought
appellant to the Baytown jail for further investigation.  Upon arriving at the
station, appellant was read statutory warnings and asked if he wished to give a
breath specimen.  Appellant refused to answer as to whether he would give a
specimen and became very belligerent. 








Officer Krutsinger, noticing a strong odor of alcohol on
appellant=s breath, walked him to the Avideo room@ where appellant was
asked to perform another series tests, which also were captured on videotape. 
Appellant, although antagonistic, completed all of the tests.  Appellant,
however, refused to answer some questions, while answering others.  Near the
conclusion of the station video, appellant was read his rights, asked if he
understood these rights, and whether he wished to waive them.  Appellant
responded in the negative, and the officers ceased questioning.

 Appellant was charged with the misdemeanor offense of
driving while intoxicated (ADWI@).  Appellant
pleaded Anot guilty.@  The jury found
appellant guilty as charged, and the trial court sentenced appellant to
one-hundred eighty days= confinement in the Harris County Jail,
suspended his sentence by placing him on community supervision for one year,
and assessed a fine of $600.  

Prior to trial, appellant filed a motion to suppress all
oral statements he made on the videos at the scene and at the police station,
contending that he was arrested without being given his Miranda warnings,
and that he had invoked his right to be silent at the station by refusing to
answer some questions.  The trial court conducted a hearing on this motion
during two portions of the trial, and made the following conclusions: 

!       The traffic stop of appellant=s vehicle was supported by
reasonable suspicion based on dispatch information regarding a red truck
(similar to the one driven by appellant) hitting a Suburban and fleeing the
scene.

!       Appellant was legally detained based on
reasonable suspicion. 

!       The search of appellant=s pocket did not escalate appellant=s legal detention to an illegal
arrest without a warrant or probable cause, but the product of the searchCthe lighterCwould be suppressed. 

!       The parties could not offer any testimony in
regard to interpretation of the field sobriety tests performed by appellant on
the scene video (State=s Exhibit 2) and on the station
video (State=s Exhibit 3). 








!       Appellant did not invoke his right to remain
silent at the station by refusing to answer some questions, because Ain order to invoke the right to
remain silent, a person must do more than just remain silent,@ and appellant did not invoke his
right to remain silent until the end of the station video whenCafter being read his rightsCappellant responded that he did not
wish to waive any of his rights.  

!       The videos were admissible, except for the
audio portion during the part in which appellant was read his rights and
refused to waive such rights. 

 

II. Standard of Review 

We review the trial court=s ruling on a
motion to suppress under an abuse‑of‑discretion standard.  Long
v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991). If supported
by the record, a trial court=s ruling on a motion to suppress will not
be overturned.  Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At a suppression hearing, the trial court is the sole
finder of fact and is free to believe or disbelieve any or all of the evidence
presented.  Id.  We give almost total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court=s application of the law to the facts if
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

III.  Issue and Analysis 

In a single issue, appellant contends that, because he was
under arrest and was not given his Miranda and Texas Criminal Code of
Procedure Article 38.22 warnings, all oral statements should have been
suppressed.  Appellant appeals the trial court=s denial of his
motion to suppress stating that: 

!       Any arrest was illegal because the officers
did not have reasonable suspicion or probable cause to stop him.








!       He was arrested at the time of the initial
stop because Officer Krutsinger did not have the authority to issue a citation
for the hit-and-run accident or release him.  Appellant states that under
section 543.002 and 543.003 of Texas Transportation Code, an officer lacks
discretion to issue a citation in a case involving a person who leaves the
scene where there is property damage.  Therefore, when the law requires an
arrest, and the officer holds no discretion not to arrest, an objective person
would believe he was under arrest.

!       When Officer Krutsinger reached into
appellant=s pocket at the scene without a
warrant or probable cause, appellant was placed under arrest, and he should
have been read his Miranda warnings.  Because he was under arrest at
this point, and not read his warnings, everything following this moment (at the
scene and in station videos), including statements, acts, or refusals to
cooperate, should have been suppressed.

!       He invoked
his right to be silent at the station by refusing to answer some questions on
the video, thus all oral statements and refusals to cooperate on the station
video should have been suppressed.

A. 
Was appellant legally detained or unlawfully arrested?

Appellant contends that he was under arrest either at the
time of the initial stop for leaving the scene, or, in the alternative, at the
time of the search.  He states that because he was under arrest and not given
his warnings, all oral statements and refusals to cooperate on the videos made
at the scene and at the stationCafter the time of the allegedly illegal
arrestC should have been
suppressed.     








Interactions between police and civilians are divided into
three categories: (1) encounters, (2) investigative detentions, and (3)
arrests.  See State v. Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 
2000).  AA person is
arrested when he has been actually placed under restraint or taken into custody
by an officer or person executing a warrant of arrest, or by an officer or
person arresting without a warrant.@  Tex. Code Crim. Proc. Ann. art. 15.22
(Vernon 2005).  However, this Arestraint of liberty@ standard is not
adequate when distinguishing between an arrest and a detention because it is a
characteristic common to both.  Dang v. State, 99 S.W.3d 172, 180 (Tex.
App.CHouston [14th
Dist.] 2003), rev'd on other grounds, 154 S.W.3d 616 (Tex. Crim. App.
2005); Green v. State, No. 14‑03‑00213‑CR, 2004 WL 1381021,
at *4 (Tex. App.CHouston [14th Dist.] Jun. 22, 2004, pet.
ref=d) (not designated
for publication).  Whether a person is under arrest or subject to a temporary
investigative detention is a matter of degree and depends upon the length of
the detention, the amount of force employed, and whether the officer actually
conducts an investigation.  See Woods v. State, 970 S.W.2d 770, 775
(Tex. App.CAustin 1998, pet. ref=d).  Likewise,
whether a detention is an actual arrest or an investigative detention depends
on the reasonableness of the intrusion under all of the facts.  See Rhodes
v. State, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

1.       Was
appellant under arrest at the time of the initial stop for fleeing the scene of
the hit-and-run? 

          Appellant
first contends that he was under arrest for Fourth Amendment purposes at the
initial stop for fleeing the scene of a hit-and-run accident involving an
unattended vehicle.  Appellant relies on sections 543.002 and 543.003 of the
Texas Transportation Code to assert that, because Officer Krutsinger lacked the
authority to issue a citation and release him, an arrest was mandatory.  See
Tex. Transp. Code Ann. '' 543.002, 543.003
(Vernon Supp. 2006).  Appellant argues that, because an arrest was mandatory
and he was not read his rights, the videos and his oral statements should have
been suppressed. 

Appellant was stopped and pulled over because Officer
Krutsinger, at the very least, had reasonable suspicion to believe that
appellant=s red truck had been involved in a hit-and-run
accident with a Suburban.  See id. ' 550.024.  Section
550.024 states as follows: 

(a) The operator of a vehicle that collides with and damages an
unattended vehicle shall immediately stop and:

(1) locate the operator or owner of the unattended vehicle and give
that person the name and address of the operator and the owner of the vehicle
that struck the unattended vehicle; or








(2) leave in a conspicuous place in, or securely attach in a plainly
visible way to, the unattended vehicle a written notice giving the name and
address of the operator and the owner of the vehicle that struck the unattended
vehicle and a statement of the circumstances of the collision.

(b) A person commits an offense if the person violates Subsection (a). 
An offense under this section is:

(1) a Class C misdemeanor, if the damage to all vehicles involved is
less than $200; or

(2) a Class B misdemeanor, if the damage to all vehicles involved is
$200 or more.

Id.
 Sections
543.002 and 543.003 set up the procedure that an officer must follow should he
arrest someone for committing an offense under Section 550.024, or another
violation of this subtitle.  More specifically, section 543.002(a) provides as
follows: 

A person arrested for a violation of this subtitle punishable as a
misdemeanor shall be immediately taken before a magistrate if:

(1) the person is arrested on a charge of failure to stop in the event
of an accident causing damage to property; or

(2) the person demands an immediate appearance before a magistrate or
refuses to make a written promise to appear in court as provided by this
subchapter.

 

Id. ' 543.002 (emphasis added).  Section 543.003 provides
as follows:

An officer who arrests a person for a violation of this subtitle
punishable as a misdemeanor and who does not take the person before a
magistrate shall issue a written notice to appear in court showing the time and
place the person is to appear, the offense charged, the name and address of
the person charged, and, if applicable, the license number of the person's
vehicle.

Id. ' 543.003 (emphasis
added).  Appellant contends that under these statutes, it was mandatory to
arrest him, and because he was arrested for purposes of Miranda and
Article 38.22, all of his statements should have been suppressed.  We disagree
with appellant=s interpretation of these statutes.  








When discerning the meaning of a statute, the reviewing
court should begin its analysis by looking at the plain language of the statute
in question.  Ex Parte Whiteside, 12 S.W.3d 819, 821 (Tex. Crim. App.
2000).  If the statute is clear and unambiguous, the plain meaning of its words
should be applied.  Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim.
App. 1991).  If, however, the plain language of a statute would lead to absurd
results that the legislature could not possibly have intended or if the
language is not plain but rather ambiguous, a court may consider extratextual
factors.  Id. at 785B86.

  Under the unambiguous language of these statutes, an
officer is not required to arrest a person who violates section 550.024. 
Sections 543.002 and 543.003 set forth the procedure that officers must follow if
they arrest an individual for committing an offense under section 550.024. 
Section 543.002 states that a person who is arrested should be taken
immediately before a magistrate under certain circumstances.  Under section
543.003, if an officer arrests a person and does not take that person before a
magistrate, the officer shall issue a written notice showing the time and place
the person is to appear in court.  See Tex.
Transp. Code Ann. '' 543.002, 543.003.  These statutes do not
make it mandatory for an officer to arrest someone for colliding with a vehicle
and failing to stop; rather, they state that such an offense is a misdemeanor,
and that an officer who decides to arrest an individual based on this offense
must follow certain procedures.[1] 
See Berrett v. State, 152 S.W.3d 600, 606, 607 (Tex. App.CHouston [1st
Dist.] 2004, no pet.) (concluding that under section 543.003, a peace officer,
in lieu of a custodial arrest may issue a citation or a written notice to
appear before a magistrate to a defendant who commits a Class C misdemeanor). 
We conclude that an arrest was not mandatory, and appellant was not under
arrest at the time of initial stop for leaving the scene of the alleged
offense.  Id.  








At most, appellant was under investigation for the
possibility of committing a misdemeanorCfailure to stop
and leave information for the owner of the unattended Suburban that he
allegedly hit.[2] 
At the time of the stop, Officer Krutsinger was conducting an investigation
based on reasonable suspicion that appellant may have committed a traffic
offense based on a detailed dispatch he had received.  Officer Krutsinger had
information that a red pick-up truck had hit a parked Suburban and fled the
scene.  After receiving this dispatch, he was justified and had reasonable
suspicion to stop appellant, who was driving a red truck in the area of the
offense.  See McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App.
1993) (finding that if an officer has a reasonable basis for suspecting a
person has committed a traffic offense, the officer may legally initiate a
traffic stop); Mann v. State, 525 S.W.2d 174, 176 (Tex. Crim. App. 1975)
(concluding that officers, upon receiving an anonymous call, were justified in
initiating an investigation by proceeding to hunt for a car and occupants
fitting the description given over the phone); Louis v. State, 825
S.W.2d 752, 754B55 (Tex. App.CHouston [14th
Dist.] 1992, no pet.) (concluding that evidence supported trial court=s finding that
police officer=s initial stop of a light tan Cadillac was legal when
it was the only car on the street where a robbery had occurred and it was
reported that the robbery suspects were driving a white Oldsmobile).  

Because appellant was not under arrest, but only under
investigative detention at the time of the stop, his rights under Miranda and
Article 38.22 had not been implicated.  Thus, we conclude that the trial court
did not abuse its discretion in impliedly finding that appellant was not
arrested at the time of the initial stop. 

 








2.       Did
appellant=s detention rise to an illegal
arrest when the police officer conducted a pat-down?

Appellant further contends that even if the arrest was not
mandatory, a reasonable person would have believed he was under arrest when
Officer Krutsinger conducted his pat-down.  A police officer may lawfully stop
and detain a person for a traffic violation.  See Garcia v. State, 827
S.W.2d 937, 944 (Tex. Crim. App. 1992).  During the detention, the officer may
request information concerning the driver=s license,
ownership of the vehicle, the driver=s insurance
information, the driver=s destination, and the purpose of the
trip. Mohmed v. State, 977 S.W.2d 624, 628 (Tex. App.CFort Worth 1998,
pet. ref=d).  An officer
also may conduct a warrant check to determine whether the driver has any
outstanding warrants, conduct a pat down search of the driver for weapons, and
request the driver=s consent to search his vehicle.  Smith
v. State, 840 S.W.2d 689, 692 (Tex. App.CFort Worth 1992,
pet. ref=d).  A person held
for investigative detention is not in custody.  

If, during a valid traffic stop and detention, the officer
develops reasonable suspicion that the detainee is engaged in criminal
activity, then prolonged or continued detention is justified.  See Davis v.
State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  The determination of
whether one is in custody is based entirely upon objective circumstances, not
subjective belief.   State v. Stevenson, 958 S.W.2d 824, 829 (Tex. Crim.
App. 1997).  Police requests for performing sobriety tests, directions on how
to perform tests, and queries concerning a suspect=s understanding of
his rights do not constitute interrogation. Smith v. State, 105
S.W.3d 203, 207 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Additional
factors to consider in determining the reasonableness of the detention include
the nature of the crime under investigation, the degree of suspicion, the
location of the stop, the time of day, and the reaction of the suspect.  State
v. Moore, 25 S.W.3d 383, 386 (Tex. App.CAustin 2000, no
pet.).  Another important factor is whether the officers actually conducted an
investigation after seizing the suspect.  Id.   








Officer Krutsinger=s investigation
was not intrusive.  From the time of the stop, Officer Krutsinger was
conducting an ongoing investigation.  At the suppression hearing, Officer
Krutsinger testified that he received a call from dispatch in regard to a
hit-and-run accident involving a red pick-up truck.  He drove to the location
and observed a red Chevy pick-up truck swerving in its own lane of traffic.  He
instituted a traffic stop, and appellant exited his vehicle.   








The accident investigation later became a DWI investigation
after appellant admitted to consuming three, tall beers.  See Berkemer v.
McCarty, 468 U.S. 420, 423, 104 S.Ct. 3128, 3141, 82 L. Ed. 2d 317
(1984) (stating that at most, the accident investigation may have escalated
from a consensual encounter to an investigative detention, but the mere focus
upon the defendant did not convert the investigation into an arrest).  When
Officer Krutsinger was patting down appellant, he felt an object, and asked
appellant what it was.  Officer Krutsinger then reached into the pocket and
removed a lighter.[3] 
Officer Krutsinger testified that he typically pats down a suspect for his own
safety concerns.[4] 
Even assuming that Officer Krutsinger possessed probable cause to arrest, the
existence of probable cause does not establish custody.  See Stevenson,
958 S.W.2d at 829 n.7.  An officer=s knowledge of
probable cause must be manifested to the suspect.  Id.  Moreover, detention
for investigatory purposes does not establish custody.  Id. at 829 (the
mere fact a defendant becomes the focus of a criminal investigation does not
convert the investigation into an arrest).  Furthermore, there is no evidence
in the record that Officer Krutsinger manifested to appellant any intent to
arrest until appellant was formally arrested.  See Stevenson, 958
S.W.2d at 829 (stating that detention for investigatory purposes does not
establish custody).  An objective analysis of the totality of the circumstances
demonstrates that Officer Krutsinger=s search and
seizure of appellant was a temporary investigative detention.  Officer
Krutsinger had specific articulable facts which warranted a temporary
detention.  The initial seizure in this case is a classic example of a valid
temporary investigative detention.  








Therefore, we conclude that, under the totality of the
circumstances, the pat-down was part of this investigation and did not exceed
the permissible scope of Terry.  See Lemons v. State, 135 S.W.3d
878, 884 (Tex. App.CHouston [1st Dist.] 2004, no pet.) 
(finding that Terry stop and pat-down was proper when officer stated
that, among other things, he conducts pat-downs to check for weapons for safety
concerns, particularly in situations involving narcotics); Ivery v. State, No.
14B2-00337-CR, 2003
WL 21191134, at *3 (Tex. App.CHouston [14th Dist.] May 22, 2003, pet.
ref=d) (not designated
for publication) (holding that until the defendant was placed under arrest, the
pat-down search was merely an investigative detentionCa search for
weaponsCjustified by the
officer=s concern for his
safety); see also Keaton v. State, 755 S.W.2d 209, 210 (Tex. App.CHouston [1st
Dist.] 1988, pet. ref=d) (concluding that placing a motorist in
a patrol car did not amount to a custodial arrest so as to require Miranda
warnings, despite the officer=s testimony that the motorist was not free
to leave during the traffic stop).  We further conclude that the trial court
did not abuse its discretion in impliedly determining that, under the
circumstances reflected by this record, the traffic stop amounted only to a
temporary investigative detention.  See Spight v. State, 76
S.W.3d 761, 769‑70 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (concluding that because the officer felt a heightened
concern for his personal safety, handcuffing the defendant did not amount to
arrest and was reasonable as a temporary investigative detention);  Nargi v.
State, 895 S.W.2d 820, 822 (Tex. App.CHouston [14th
Dist.] 1995, pet. dism=d, improvidently granted) (holding that
ordering a suspect to the ground does not necessarily convert an investigatory
detention into an arrest). 

B. 
When did appellant invoke his right to be silent?

Appellant=s final argument is that he invoked his
right to be silent by simply being silent and refusing to answer questions. 
Appellant contends that he invoked this right when he reached the station.  The
trial court concluded, in denying appellant=s motion to
suppress, that in order to invoke one=s right to be
silent, there had to be an unequivocal assertion of the right.  We conclude
that appellant, by refusing to answer some, but not all questions asked, did
not invoke his right to be silent.








A defendant has the right to choose between speech and
silence.  Miranda v. Arizona, 384 U.S. 436, 473B74, 86 S.Ct. 1602,
1627, 16 L.Ed.2d 694 (1966).  An accused may not selectively invoke his right
to be silent.  See Connecticut v. Barrett, 479 U.S. 523, 529, 107 S.Ct.
828, 832, 93 L.Ed.2d 920 (1987).  An assertion of the right to remain silent
must be unequivocal so that a reasonable police officer in the circumstances
would understand the statement to be a request to invoke such a right.  See
Davis v. United States, 512 U.S. 452, 455, 114 S.Ct. 2204, 2355, 129
L.Ed.2d 362 (1994); see also  Faulder v. State, 611 S.W.2d 630, 633B34 (Tex. Crim.
App. 1979) (concluding that request by defendant that he be allowed a couple of
days to get matters straight in his mind was an invocation of the right to
remain silent and law enforcement officers= failure to honor
such request rendered statement inadmissible); Ochoa v. State, 573
S.W.2d 796, 800 (Tex. Crim. App. 1978) (holding that  statement by the accused
that he thought he ought to talk to an attorney before answering questions or
signing anything was sufficient to invoke the right to counsel even though the
request was not pressed); Mayes v. State, 8 S.W.3d 354, 361 (Tex. App.CAmarillo 1999, no
pet.) (finding statement by defendant that she was Anot talking@ and was going to
shut up, as well as, AI have to get [a lawyer] for both of us@ when told she
could talk to lawyer was an unambiguous invocation of the right to remain
silent and to counsel).

Appellant argues that the video made at the station
demonstrates that, during the interview, he clearly and unequivocally exercised
his right to remain silent simply by refusing to answer the officer.  We
disagree.  After viewing the videotape, we conclude that appellant did not (1)
make a clear invocation of his right to be silent during this interview or (2)
express a clear desire to terminate the interview.  Indeed, although appellant
was belligerent and appeared to be intoxicated, he answered most, if not all,
of the questions posed by the officer.  For instance, when Officer HellmanCthe officer who
administered the tests at the stationCasked appellant to
perform a certain test, appellant would stand silent for moments at a time, but
he never told the officer in unequivocal terms that he wanted to remain silent.








 Appellant did not invoke his right to be silent until the
conclusion of the video when he was read his rights.  At that point, appellant
was asked if he understood his rights and if he wished to waive his rights. 
After a significant pause, appellant responded, ANo,@ and all
questioning ceased.  Prior to that, appellant=s silence with
respect to some questions while continuing to respond to others throughout the
video did not constitute an unambiguous and unequivocal invocation of his right
to remain silent.  See Anderson v. State, No. 02-05-00169-CR,
2006 WL 744272, at *2 (Tex. App.CFort Worth, July
12, 2006, pet. dism=d) (not designated for publication)
(holding that a defendant may not selectively invoke his right to remain silent
and therefore the trial court did not abuse its discretion in admitting the
portion of the videotape in which the defendant refused to answer specific
questions while answering others); see also Figueroa v. State,
740 S.W.2d 537, 539 (Tex. App.CHouston [1st Dist.] 1987, pet. ref=d) (holding that
defendant did not invoke his right to remain silent when he became emotionally
upset and asked for guarantees during interrogation, in the absence of a clear
statement that he did not want to talk); Rodriguez v. State, No.
02-03-00288, 2004 WL 816337, at *2B3 (Tex. App.CFort Worth, Apr.
15, 2004, no pet.) (not designated for publication) (concluding that even where
defendant stated, ADon=t want to answer@ in direct
response to the officer=s question, the defendant did not
unambiguously invoke his right to remain silent).  Thus, we conclude that the
trial court did not err in ruling that appellant did not invoke his right to be
silent prior to appellant=s express statement at the conclusion of
the videotape.  

IV. Conclusion

The trial court did not err in impliedly finding that: (1)
the stop of appellant=s vehicle was supported by reasonable
suspicion based on dispatch information regarding a red truck (similar to the
one driven by appellant) hitting another vehicle and fleeing the scene; (2)
appellant was not under arrest at the time of the initial stop; (3) appellant
was legally detained based on reasonable suspicion; (4) the search of appellant=s pocket did not
escalate appellant=s legal detention to an illegal arrest
without a warrant or probable cause; and (5) appellant did not invoke his right
to remain silent at the station by refusing to answer some questions, because Ain order to invoke
the right to remain silent, a person must do more than just remain silent,@ and appellant=s invocation of
his right to remain silent did not occur until the end of the station video
whenCafter being read
his rightsCappellant responded that he did not wish to waive any
of his rights.  The trial court did not abuse its discretion in denying the
motion to suppress.  Accordingly, appellant=s sole issue on
appeal is overruled and the trial court=s judgment is
affirmed.

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed October 18, 2007.

 

Panel consists of
Justices Anderson, Frost, and Mirabal.*

 

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  We note that appellant was not arrested at the time of the initial stop
for leaving the scene of the alleged offense; rather, appellant, after
admitting to consuming at least three twenty-ounce beers, was under an
investigative detention for driving while intoxicatedCthe offense for which he ultimately
was arrested and charged. 





[2]  We note that although the record contains
photographs depicting damage to appellant=s
truck, the record does not reflect the cost of the damage to either appellant=s truck or the Suburban that was hit.  The cost of the
damages to the vehicles, however, is not relevant as appellant was not arrested
and charged for this offense, and the only offense before this court is
appellant=s offense for driving while intoxicated. 





[3]  Appellant contends that by suppressing evidence of
the lighter, the trial court implicitly found that there was no reasonable
suspicion for Officer Krutsinger to believe appellant was carrying a weapon. 
Although the trial court did suppress the lighter, the trial court, as the
finder of fact, also concluded that the search was reasonable and that Officer
Krutsinger did not violate any of appellant=s
constitutional rights.  The fact that the trial court suppressed the lighter is
not determinative of whether Officer Krutsinger had reasonable suspicion to
conduct a pat-down in search for weapons.  Even though the trial court
suppressed the lighter, as the finder of fact, it also concluded that the
search was reasonable.





[4]  At the motion-to-suppress hearing, Officer Hellman
testified that he believed that when an officer pats a suspect down, an
investigative detention is converted into an arrest.  The trial court was not
required to credit Officer Hellman=s
subjective belief regarding this legal determination.  In addition, as the
finder of fact at the motion-to-suppress hearing, the trial court was free to
believe or disbelieve any or all of the evidence presented.  Therefore, the
trial court could have disbelieved Officer Hellman=s testimony, while believing Officer Krutsinger=s testimony.  See Brooks, 76 S.W.3d at
430. 





*  Senior Justice Margaret G. Mirabal sitting by assignment